GEORGE N. WALKER *et al.*, Plaintiffs in Error, *v.* WILLIAM CRAIG, Administrator *de bonis non* of the Estate of HIRAM WENTWORTH, deceased, Defendant in Error.

ERROR TO FULTON.

An administrator may legally sell and transfer, at a discount, negotiable paper, taken for the estate, before it falls due; and allowance to the assignee of such paper and payment thereof, within a year of taking out letters is good, provided all the transaction was in good faith.

Executors and administrators may assign notes made to the testator or intestate.

THIS cause was commenced at the October term of the Fulton County Circuit Court, 1855, by William Craig, administrator *de bonis non* of the estate of Hiram Wentworth, deceased, and William Wentworth, heir at law of the said Hiram Wentworth, who filed their bill in chancery against George N. Walker and others, setting forth the facts that one Albert E. Wentworth was, on the 24th day of May, 1854, appointed administrator of the estate of Hiram Wentworth, then lately deceased, of said County of Fulton, by the county court of said county, which court had jurisdiction, etc. That

the said Albert E. Wentworth accepted said appointment; qualified, and took possession of the effects of said estate. That the said administrator, in discharge of his duty, some time in the month of July, 1854, sold, among other things, a lot of goods, wares, etc., to Garing and Branson, a firm composed of Charles M. Garing and Edward Branson, doing business in said county, and State of Illinois, for the sum of fourteen hundred and fifty-eight dollars, who executed to the said Albert E. Wentworth, administrator as aforesaid, with some persons as security thereon, their promissory note for that amount, payable twelve months after the date thereof; and delivered the same to the said Albert E. Wentworth. That the makers thereby became indebted and liable to pay the said estate that sum, and the said Albert E. received the said note as assets belonging to the estate of which he was administrator, to be applied by him in payment of the creditors and distributees, etc.

And that the firm of Walker & Hancock, composed of George N. Walker and ———— Hancock, in August, 1854, presented a claim for one hundred and four dollars and eighty-eight cents, against the said estate, to the county court of said county, for allowance, which was allowed in their favor, and classed as a fourth class claim.

And that, up to about the 10th day of May, A. D. 1855, no account of the condition of the said estate had been rendered by the administrator, A. E. Wentworth. That there was no money on hand liable and subject to dividend among the creditors. That no order had ever been made by the said court for the payment of creditors. That the administrator had no right, by law, to make payment to any of them at that time. That one year had not expired, since the issuing of letters of administration, at that time, consequently, the court could make no order, etc., and that the time for the presentation of claims would not expire for more than a year after said time; and that there were just claims against the estate which had not been presented and allowed. That the available personal assets amount to about the sum of nine thousand dollars, and the real estate, over and above widow's dower, is about the value of four thousand dollars.

The probable expenses of the administration, until closed up, will be about eight hundred dollars; the specific allowance of widow, five hundred dollars; and the amount of claims presented and allowed, at time of filing bill, about nine thousand nine hundred and twenty-six dollars and twenty-three cents, which would probably be increased to about eleven thousand dollars; leaving a balance, to be distributed among heirs of decedent, of about seven hundred dollars. That the

estate might or might not prove solvent, large amounts of the property remaining to be sold.

And that on or about the said 10th day of May, A. D. 1855, the said A. E. Wentworth, while acting as administrator of said estate, in violation of his oath, etc., fraudulently assigned the said note of Garing & Branson to the said George N. Walker, and took, in payment therefor, about eleven hundred dollars in money, and paid in full the claim allowed against said estate in favor of Walker & Hancock; making in all about twelve hundred dollars. That the makers of the note were responsible and prompt, and that at the time of said sale and assignment, the note, allowing the legal discount, was worth the sum of fourteen hundred and thirty dollars, and charge that said Walker committed a fraud upon the estate by purchasing at so oppressive and unusual a discount, and in receiving and taking his said demand in full when the administrator had no right to make any payment thereon. And, also, that said Walker knew the consideration of said note, and that Wentworth held it, as administrator. And that no order had been made to pay debts of the estate, and that he had reason to suspect, from the conduct of the said Albert E., he was violating the trust reposed in him; and that he did so suspect, and charges contrivance and fraud on the part of said Walker. And sets forth, also, that immediately after the procurement of the money for said note, the said Albert E. collected large amounts due the estate, and absconded; the whole amounting to several thousand dollars. That the said A. E. Wentworth went to some place unknown, taking with him all his available means, etc., and that the amount received for said note has been wholly lost to said estate.

And that the county court of said county, on the 5th day of July, 1855, revoked the letters of administration of the said A. E. Wentworth, and, thereupon, appointed the complainant, Craig, administrator *de bonis non*, of said estate; that he is now acting as such administrator; that the said William Wentworth is one of the heirs, and entitled to one-fourth the estate after the debts are paid, etc. And show, by their amended bill, that the note is due, and in the hands of the attorneys of Walker & Hancock, and that suit had been commenced thereon.

They, then, in their original bill, pray to have George N. Walker, Charles M. Garing, Edward Branson and Albert E. Wentworth, parties defendant, requiring their answers under oath; praying injunction to restrain the payers from paying the said note, and Walker & Hancock from receiving the same, etc.; and, in amended bill, make Daniel J. Hancock party defendant, etc.; and pray, in their original bill, that the

note may be decreed to the complainant, Craig, administrator, as aforesaid.

Upon which proper process issued to Fulton and Mason counties, and return of service as to all but A. E. Wentworth, and due proof of publication as to him.

Injunction issued according to prayer of bill, and service had upon the proper parties, etc.

The defendant, Walker, then filed his answer, under oath, and admits that it is true that Albert E. Wentworth was appointed administrator of the estate of Hiram Wentworth, and that the complainant, William Craig, was subsequently appointed administrator, *de bonis non*, and that he has no accurate knowledge of the amount of assets, real or personal, belonging to the estate; but has understood and believes the estate to be solvent, and believes the promissory note in the bill mentioned was given to the said A. E. Wentworth, as administrator of said estate, and that he held the same as assets; and admits that a claim of about one hundred and four dollars and eighty-eight cents was allowed against the estate, and in favor of the firm of Walker & Hancock, as stated in bill of complaint. That the same was duly allowed, and classed as a fourth class claim. As to whether the administrator, at the time of the transfer of said note to defendant, an account current had been rendered, or an order of court had been made to pay the debts of the estate, or whether the administrator had money on hand or not, he has no knowledge; and says that by law the administrator had a right to pay the debts of the estate at any time he could do so (after having become satisfied that the estate was solvent); and charges that no injustice could be done to creditors, legatees or others, thereby, as to the time, when the time would expire for presentation. Knew nothing of claims against estate not allowed, and that he had no knowledge of the value of the real estate of the intestate; and admits that he did purchase a note of A. E. Wentworth for the sum of $1,458.00, drawn 28th July, A. D. 1854, payable in twelve months after date, to Wentworh, as administrator; and that the same was sold to the firm of Walker & Hancock, and indorsed by A. E. Wentworth, as administrator, etc. And denies all knowledge of fraud, actual or intended, by the said A. E. Wentworth at that time; and that he had no reason to suspect that any fraud was intended. That the trade was, as far as he knew, a fair one, and made for a valuable consideration. That he paid administrator the sum of twelve hundred dollars in money, and gave him a receipt in full for the claim allowed against the estate of his intestate, in favor of Walker & Hancock, which made about the sum of thirteen hundred and nine dollars and forty cents,

and that that sum was about a reasonable amount, taking all things into consideration, and was not advised of the promptness of the makers; and denies any actual or intended fraud in receiving payment of allowance in favor of Walker & Hancock. And states that nothing had come to his knowledge whereby he had a right to suspect that the administrator intended to defraud the creditors or distributees, or was violating the trust reposed in him; but that the said Wentworth, administrator as aforesaid, at the time of the transfer of said note, represented to defendants that, by having the sum of twelve hundred dollars in money, he could make a saving to the estate, by purchasing the claims allowed against the estate at a considerable discount; and that defendant believed that the money was so to be applied for the benefit of the estate. And denies any knowledge or suspicion that the administrator, A. E. Wentworth, intended any fraud upon or injury to the estate, the creditors thereof, or the distributees, and that if the defendant did anything to assist the administrator in his frauds upon them, that it was done without knowledge, intention or design: And that the transaction on his part was fair and *bona fide*, without fraud or collusion, for a valuable consideration, and without actual or constructive notice of the fraudulent intentions of Wentworth.

And that nothing could be lost to the estate in any way by the transactions, for the reason that the said A. E. Wentworth, when he took upon himself the administration of said estate, entered into bond in a much larger sum than the amount of assets that came into his hands, with good and undoubted security, and that William Craig, administrator *de bonis non* of the estate of Hiram Wentworth, deceased, and one of the complainants, is one of the securities, and is thereby responsible to pay over to the administrator *de bonis non* whatever of assets came into the hands of A. E. Wentworth, as administrator, etc.

Prays that the injunction may be dissolved, etc.

At the same term the complainants filed their replication, maintaining their bill, etc.

The following agreement of facts, in substance, was then submitted to the court:

1st. That when the note, given by Garing, Branson and Kingery to Albert E. Wentworth, administrator of Hiram Wentworth, was transferred by him to the defendants, Walker and Hancock, that he had rendered no account current, etc. There had been no order to pay claims allowed against the estate of Hiram Wentworth, deceased, by the county court. That one year had not expired from the issuing of letters to the said A. E. Wentworth, which were granted and dated May 24th, 1854. That the note in controversy was assigned on the 12th

day of May, 1855. That there were claims existing against said estate not presented or allowed, but which have been since, to amount of about $1,000. That the said A. E. Wentworth had no money in his hands, at that time, to pay debts, etc.; but that Walker & Hancock had no knowledge that he had no such money, but that, at the time of the transfer, Wentworth stated to Walker that, by having the money, he could buy up claims against the estate, and thereby make a saving to the estate.

2d. That the available personal assets are about nine thousand dollars, and real estate, subject to widow's dower, amounts to about $4,000.

3d. That the widow's allowance is five hundred dollars; expenses of administrator about eight hundred dollars; amount of claims allowed against the estate is eleven thousand dollars.

4th. That Walker, when he purchased the note, was not a participator in, nor had any knowledge of the fraudulent designs of Wentworth. That he did have some doubt as to whether Wentworth could sell and transfer the note legally to him, and that he took the opinion of his attorney thereon; who advised him that Wentworth could legally transfer the note.

5th. That the makers of said note now are, and have been ever since the execution of the same, solvent.

6th. That the said A. E. Wentworth, when he left the state, had accounted for no money in his administration, and that no liquidation of his liabilities has been made by him to the estate.

7th. That the defendant, Walker, resides in Mason county, and about ten miles from the county seat of Fulton county; and, also, about the same distance from where the most of the business of said estate, outside of the county court, was done. And that deceased conducted a warehouse business about two miles from where Walker & Hancock conducted the same and other kinds of business.

8th. That A. E. Wentworth was removed, and William Craig appointed his successor, as charged in the bill. That the note was due when the bill was filed, and was in Walker's possession; and about the time the bill in this cause was filed, he placed it in the hands of Ross & Dilworth, his attorneys. That a suit was commenced thereon against the makers, which is now pending in this court, and that the note is yet unpaid.

9th. That the facts with reference to the condition of the estate agreed to appear from the files and records of the county court of Fulton county.

10th. That the answer of Walker is to be deemed as an answer for Hancock, and their rights to be held the same.

11th. That A. E. Wentworth was a married man, having a wife and two children. That he resided, for about two years, in Fulton county, where he conducted the business of merchandising until about six weeks before his departure.

That he sold out his entire stock of goods and the demands due him, and received his pay therefor. That he had a claim of $599.09 allowed in his own favor, and another, belonging to Webster, Button & Call, for $528.54, which he caused to be allowed in his favor, by filling up a blank assignment thereon; and that he sold and assigned them to William Elliott, jr., at a large discount, for cash. That the said Albert E. owned a house and lot in the town of Ipavia, which he sold and conveyed to William Wentworth, for cash, a few days before he left the state. That on the 20th day of May, 1855, said Albert E. left his house, about dark, saying he was going a short distance, and did not know when he might return. That he left in a clandestine manner, taking with him a girl that had been living at his house as hired help. That he took no clothing with him of any account. That early the next morning, he and the girl were at the town of Kingston, in Peoria county, about forty miles from Ipavia. That there he tried to collect a note on Samuel Hutchinson, for about $4,000, given by Hutchinson to him, as administrator, for a steamboat, belonging to the estate, which note was a part of the assets of the estate. That he was anxious to obtain the whole of the money, and did receive the sum of $2,200. That he and the girl proceeded to Peoria city, and there disposed of everything salable, at public auction, and sold them for about two-thirds their value. That they then took the cars for Chicago, and in a few weeks the said Albert E. and the girl appeared at Iowa Hill diggings, in California. That Wentworth has not returned to his family, and left them without means of support, except the household and kitchen furniture, and provisions on hand; which was no more than is exempt from execution by the laws of this state. That he left no other property of any other kind in this state. That within six months before his departure, he had on hand property to the value of $2,000 or $3,000, and indebtedness due him of about that much more, which he reduced to cash before he left. That he has never accounted for the money he obtained of defendant, Walker, of Elliott, or of Hutchinson.

That he was owing sums of money to different ones, which he avoided, and left without paying.

But of these facts occurring before the transfer of the note in controversy, the said Walker & Hancock had no knowledge or information.

The bill, answer and proof, in connection with the

facts here agreed to, are to be taken and considered on the hearing.

At the same term, the defendants, Garing, Branson and Wentworth, defaulted. The court then rendered a decree against Walker & Hancock, ordering that they render up the note to the complainant, William Craig, administrator, etc., to be accounted for by him in course of administration of said estate. And, also, making the injunction issued against them perpetual, as, also, the injunction against the defendants, Garing & Branson; and, also, that the defendants, Walker & Hancock, pay costs of suit.

For the reversal of this decision, the defendants below prosecuted a writ of error to this court, and assign for error,

1st. That the court erred in decreeing that the note in controversy be delivered over to the administrator of said estate, by Walker & Hancock.

2d. The court erred in making the injunctions against the defendants perpetual.

Ross and SHOPE and C. L. HIGBEE, for Plaintiffs in Error.

GOUDY and JUDD, for Defendant in Error.

SCATES, C. J. The question presented is, whether an administrator can legally sell and assign a negotiable note, taken by him for personal property of the estate, sold by him; and before the note falls due, where there is no fraud in the assignee; and whether the payment, in full, of an allowance to the assignee, within a year of taking out letters, and without an order for payment, by way of discount or deduction from the sum due for the note, will be good and maintainable, on behalf of the assignee.

The agreed facts show that, while plaintiffs knew the note was given for property of the estate, and that no order was made for the payment of debts, yet that they were not guilty of any fraud in the transaction, and were ignorant of the intention of Wentworth, the administrator, to commit a fraud on the estate. The facts showing Wentworth's frauds on the estate, were not then known to them, but have since come to their knowledge.

Had the plaintiffs been implicated in any fraud, by the evidence, there could be no pretense of law or justice to sustain the assignment, or payment. But regarding the plaintiffs as free from, as innocent of, any fraud, in fact and intention, on their part, I cannot doubt the power of the administrator to collect, or to sell and negotiate, the sale notes of the estate given to himself, nor his power to pay debts, before

orders of the county court for payments are made. A different rule would deny the administrator the power to commit a *devastavit*, either in the mode of collection or payment of debts. · If every waste and *devastavit* made or committed through the fraud of the administrator upon the estate, will authorize a court of equity to set aside the transactions, and restore to the estate the property, money or effects wasted, without regard to the rights of parties who may have acquired them of the administrator, in due course of fair trade, for a fair and valuable consideration, and in good faith, then, indeed, the doctrine of *devastavits*, by administrators and executors, and *executors de son tort*, may, for all practical purposes, be stricken from the books. The safer, speedier and better course, would be to follow the property specifically, while traceable; or, when not, to recover its value. For if the court may set aside the contract for the fraud of the administrator alone, when the other contracting party acted in good faith, it would leave the latter without protection, and liable to account for the property in kind, if in possession, or for values of the property, moneys or effects. If the *power* of the administrator is circumscribed, and exists only when he acts fairly, faithfully, and for the good of the estate, then no one can innocently deal with him, in cases of fraud by him; but every one must, at his own peril, ascertain whether the administrator is acting fairly in the given case. Such seems to be the rule upon which the decision was made in this case; for it is clearly shown that the administrator committed a fraud upon, and waste of the estate, by collecting in the moneys due it, and absconding with the money. But it is equally clear, that plaintiffs knew nothing of this purpose. If their innocence cannot protect them, it must be for want of power in the administrator to do wrong and waste the estate. No man could pay his debt to the administrator before it was due; no one could receive his debt from the estate before orders for payment; nor could he receive it before the expiration of a year from issuing letters; nor more than his *pro rata* of the estate, in cases of insolvency. Legacies assented to and paid, before debts, in insolvent estates, would be recoverable back without bonds from legatees; and it would, indeed, seem to me, that all the principles of law, and provisions of the statute looking to and providing for the security of the estate against waste and a mal-administration, would become comparatively useless.

Such cannot be, and is not the law. The liability to abuse is no ground for denying the existence of a power. Although an administrator may not possess as much power as an executor, the latter deriving his power from the testator and the law, the

former from the law only, yet he possesses all necessary power to sell property, to negotiate securities, and to collect and pay debts. The law has provided a bond to indemnify the estate against waste and abuse. It may be true, this is not the only remedy in all cases, but I must think it is where innocent persons have dealt with the administrator in the fair course of trade, and upon a valuable consideration, without fraud.

There are not wanting cases in which it has been held that letters of administration have relation back to the death of the intestate, so as to give validity to the acts done, and promises made by the administrator, before he sued out letters. *White-hall* v. *Squire*, 1 Salk. R. 295; 1 Williams on Exrs. 334, Sec. 2.

So, too, executors have maintained replevin, trover or trespass, before probate of the will, where they had an *actual* possession which had been invaded and violated. 1 Williams on Exrs. p. 243.

So, again, executors and administrators became personally and individually liable to pay funeral expenses, where they give orders, or ratify or adopt the acts of others. *Brice* v. *Wilson*, 8 Adol. and Ellis R. 349, note *c ;* 3 Mees. and Welsb. R. 350. And this, it would seem, for orders given before letters taken out. *Lucy* v. *Walroud*, 3 Breigh N. C. R. 841; though, generally, an administrator is not bound for acts done before letters. 2 Williams on Exrs. p. 1522.

But trustees, guardians, executors and administrators, and other persons acting *en autre droit*, are generally held personally liable on promissory notes, because they have no authority to bind, *ex directo*, the persons or estates for whom and which they act; and it will require clear and explicit words to exempt themselves personally, which they may do, when the intention is made clearly manifest. So, if an executor or administrator make or indorse a note, in his own name, adding thereto " as executor," " as administrator," he would be personally responsible. Story on Prom. Notes, p. 70, Sec. 63 ; the additional words may be treated as surplusage, or as *descriptio personæ*.

Executors and administrators may assign notes made to the testator or intestate, as well as those made to themselves. Story on Prom. Notes, p. 139, Sec. 123 ; *Makepeace* v. *Moore*, 5 Gil. R. 476 ; *Walter* v. *Kirk et al.*, 14 Ill. R. 56 ; *Dwight* v. *Newell*, 15 ibid. 335. So, where the deceased had agreed to transfer a note, his executor or administrator may be compelled to indorse it, though without personal liability on their part. Story on Prom. Notes, p. 136, Sec. 120.

The power and right of transfer is therefore very clear, and the plaintiffs acquired the right of property in the note by the indorsement. I have as little question of the power and right

of the administrator to allow full payment of plaintiff's claim against the estate, and deduct the amount out of the price of the note.

If he has committed a *devastavit*, he and his sureties are liable.

*Decree reversed.*