THOMAS H. SMITH *et al.*

*v.*

CHARLOTTE LAATSCH *et al.*

*Filed at Mt. Vernon June 13, 1885.*

1. EJECTMENT—*evidence—title from a common source.* In actions of ejectment, where both parties claim from a common source of title, the plaintiff will only be required to show a good and connected chain of title from the common source down to himself, to entitle him to recover. If the plaintiff shows the better title, though not altogether free from objections, he will be entitled to recover, unless a paramount outstanding title is shown in another.

2. Where the defendant files an affidavit denying that he claims title from the same source as the plaintiff, the latter may show that he does so claim, by introducing in evidence the various deeds connecting him with such alleged common source; and it is no objection to the exercise of this right that the evidence offered also proves the defendant's title to be worthless. If the defendant does not deny claiming under the source named, the plaintiff need not prove that fact.

3. It was not the purpose of the legislature, in adopting the 25th section of the Ejectment act of 1872, to hold the plaintiff absolutely bound by the denial of the defendant that the parties claimed from a common source, where a counter-affidavit is filed, and thereby cut off his common law right to show that the two chains of title did run back to a common source. The sole purpose of that section was to relieve the plaintiff, in cases of this kind, from the burden of proving the defendant's chain of title as well as his own, unless the defendant should deny, by counter-affidavit, that he claimed from the alleged common source, in which event the burden would still remain upon the plaintiff, just as it did before, of proving both chains of title, running back to a common source.

4. In this case the plaintiffs filed an affidavit that they and defendants claimed title under a common source,—the father of the plaintiffs. The defendants denied this fact, and stated that they claimed under a deed from A B to C D, and a deed from the latter, the defendants' deceased father. Plaintiffs, after proving their heirship, introduced in evidence a deed from the administrator of their father's estate, under a decree of the county court, to J. G., and a deed from him to A B, and a deed from A B to C D, and from C D to the defendants' father, made before his death, and also showed from the record that the administrator's sale and deed were void for want of jurisdiction in the court ordering the sale. This being all the evidence, the court found for the defendants: *Held,* that the plaintiffs were entitled to recover, and that the court erred in its finding and judgment.

5. STATUTE—*construction—so as not to conflict with the common law.*
Statutes should be construed in reference to the principles of the common
law; and it will not be presumed the legislature intended to make any inno-
vation upon the common law further than the case absolutely requires, or
further than that specified or clearly implied.

WRIT OF ERROR to the Circuit Court of Effingham county;
the Hon. WILLIAM C. JONES, Judge, presiding.

Mr. JOHN M. LANSDEN, and Mr. ANGUS LEEK, for the plain-
tiffs in error:

If the plaintiff alleges a common source of title, and de-
fendant denies it, as now provided for in the statute the
parties are left just as they were before the 25th section of
the statute was adopted. This section was not intended to
increase the burden on the plaintiff in ejectment in any case.
It simply provided for releasing him from a burden on condi-
tion of his making a certain statement under oath, very much
as the plaintiff in an action for a money demand may file his
affidavit of claim and relieve himself from other proof, unless
the defendant shall plead under oath.

Where both parties claim under the same right, the plain-
tiff is not required to trace his title back beyond the com-
mon source. *Ferguson* v. *Miles,* 3 Gilm. 365; *McConnel* v.
*Johnson,* 2 Scam. 528; *McClure* v. *Englehardt,* 17 Ill. 50;
*Holbrook* v. *Brenner,* 31 id. 501; *Pollock* v. *Maison,* 41 id.
516; *Huls* v. *Buntin,* 47 id. 396.

Messrs. WOOD BROS., for the defendants in error:

The plaintiffs were required to go behind the source of title
set up in their affidavit, as it was denied. *Hartshorn* v. *Daw-
son,* 79 Ill. 110; *Clark* v. *Day,* 93 id. 482.

Treating the declaration and affidavit of plaintiffs, and the
plea and affidavit of defendants, as pleadings sworn to in the
case at bar, it is evident that plaintiffs, to make out their case,
must show a title in fee in Thomas H. Smith, their father.
2 Greenleaf on Evidence, sec. 309; Adams on Ejectment,

282; Tyler on Ejectment, 483; *Almond* v. *Bonnell*, 76 Ill. 539. This they might have done—

*First*—By showing a connected title from the United States, the ultimate source of title, to Smith. *Start* v. *Clegg*, 83 Ind. 85.

*Second*—As a *prima facie* title that their ancestor had possession of the premises, claiming it, by words or acts, as his own in fee. *Jenkins* v. *Pritchard*, 2 Wils. 45; *Barger* v. *Hobbs*, 67 Ill. 597; *DeWitt* v. *Bradbury*, 94 id. 448.

To enable a plaintiff to recover in an action of ejectment, he must, except in such instances as mortgagee, or grantor, or landlord, etc., show a prior possession or sufficient paper title. *Page* v. *O'Brien*, 36 Cal. 561; *Borrell* v. *Rawlings*, 30 id. 417.

It is only where both parties claim title from a common source, that it is unnecessary to prove title in that person. 2 Greenleaf on Evidence, sec. 307; *Horning* v. *Sweet*, 27 Minn. 279; *Mickey* v. *Stratton*, 5 Sawyer, 479; *Brown* v. *Brown*, 45 Mo. 415; *Gaines* v. *New Orleans*, 16 Wall. 715; *Ames* v. *Beckley*, 48 Vt. 102.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Thomas H. Smith and Belle W. Sullivan, plaintiffs in error, on the 17th day of April, 1884, brought an action of ejectment, in the Effingham circuit court, against Charlotte and Ferdinand Laatsch, defendants in error, for the recovery of the east half of the south-west quarter of section 29, in township 7, north, range 4, east. The declaration was in the usual form, and the general issue, alone, pleaded. The cause, by agreement of parties, was tried by the court without a jury, resulting in a finding and judgment for the defendants, to reverse which the plaintiffs have brought this writ of error.

Before the commencement of the trial, plaintiffs filed in the cause an affidavit, setting forth that they claimed title to

18—114 ILL.

the premises through a common source with the defendants,—namely, through Thomas H. Smith, deceased, the ancestor of the plaintiffs,—and also stating that the defendants claim title to the premises as purchasers under a sale of the same made by the administrator of the estate of the said Thomas H. Smith, deceased.    The defendants thereupon filed in the cause an affidavit, stating that they claimed title to the premises from a source other than that mentioned in plaintiffs' affidavit,—that is to say, in the manner following: "First, by deed of William C. Wright and wife to Wilhelm Goers, dated April 21, 1866; second, by deed of Wilhelm Goers and wife to Christ Laatsch, of date February 12, 1874; third, by descent to the defendants in error, as widow and heir of the said Christ Laatsch; fourth, possession under said deeds as color of title acquired in good faith, and payment of all taxes on said premises for more than seven successive years prior to the commencement of this suit, by defendants in error and those under whom they claim."    These affidavits were both read in evidence on the trial.

The plaintiffs, for the purpose of proving the issue on their part, introduced Thomas H. Smith as a witness, who testified that he was twenty-two years old on the 6th day of June, 1884; that Belle W. Sullivan was about twenty-seven years old; that she and witness were the only children and sole heirs at law of Thomas H. Smith, who was killed at the battle of Fort Donelson, in February, 1862.    The plaintiffs then, for the purpose of showing the back links in the defendants' chain of conveyances, extending to and connecting with the title of the said Thomas H. Smith, deceased, and not specified in defendants' counter-affidavit, introduced in evidence the record of a proceeding commenced in the county court of Massac county, at its February term, 1865, by J. C. Willis, as administrator of the estate of the said Thomas H. Smith, deceased, to sell the south-west quarter of the section of land above mentioned, and of which the eighty-acre tract now in dispute is a part,

for the purpose of paying the debts of the estate; also, a deed
for the premises from the said J. C. Willis, as such admin-
istrator, to John Gilbert, dated May 4, 1865; also, a power
of attorney from Gilbert to Willis, dated 29th of June, 1865,
empowering the latter to sell and convey the premises; and
finally, the record of a deed from Gilbert and wife to William
C. Wright, for said quarter section, executed by Willis, as at-
torney in fact of the said Gilbert and wife, bearing date July
18, 1865. Plaintiffs also put in evidence records of the sev-
eral conveyances through which defendants claim, as specified
in their counter-affidavit, thus showing a complete chain of
conveyances from Thomas H. Smith, deceased, the common
source of title, to the defendants. The defendants declining
to offer any evidence, the cause was submitted to the court
upon the facts above mentioned, with the result already stated.

By reason of a failure to obtain jurisdiction over the per-
sons of the defendants in the proceedings had in the county
court by Willis, as administrator, it is conceded the order of
sale was void, and that consequently his deed conferred no
title on the purchaser or those claiming through him. The
question then arises whether, under the facts shown, the court
ruled properly in holding, as it must have done, the plaintiffs
were bound to show title in their deceased father from some
legitimate source, in order to entitle them to recover.

The rule is firmly established, and has often been recog-
nized by this court, that in actions of ejectment, where both
parties claim from a common source of title, the plaintiff will
only be required to show a good and connected chain of title
from the common source down to himself, to entitle him to
recover. (*McConnel* v. *Johnson*, 2 Scam. 522; *Ferguson* v.
*Miles*, 3 Gilm. 365; *McClure* v. *Engelhardt*, 17 Ill. 50.) In
such cases, if the plaintiff shows the better title as between
himself and the defendant, although it may not be free from
objections, he will nevertheless be entitled to recover, un-
less the defendant shows a paramount outstanding title in

another.   3 Wait's Actions and Defences, 16; *Holbrook* v. *Brenner*, 31 Ill. 501.

Prior to the adoption of the present statute regulating the practice in this class of cases, the plaintiff, in order to relieve himself from the burthen or danger, as the case might be, of deducing title from the government of the United States, or some other independent source of title, was bound to show not only his own claim of title back to the common source, but that of the defendants also, and if, upon this showing, the plaintiff appeared to have the better title, he would be entitled to recover, but not otherwise.   The case of *Holbrook* v. *Brenner, supra,* well illustrates the rule and practice as they formerly existed.   In that case, Holbrook, the plaintiff, treated Bostwick, assignee in bankruptcy of Campbell, as the common source of title.   Prettyman, under whom Brenner held as tenant, was admitted to defend.   The plaintiff, for the purpose of showing that Prettyman claimed through Bostwick, introduced a deed from the latter, as assignee, to Doolittle, for the premises, bearing date June 17, 1851; then a deed from the master in chancery, under a decree for the sale of the premises, against the heirs of Doolittle, to pay the debts of the deceased.   Holbrook then offered a deed from Bostwick to himself, for the premises, dated October 18, 1850, which, as will be perceived, was from October till June older than the deed from Bostwick to Doolittle.   The court rejected this deed on the ground, among other things, that it was not connected with any paramount source of title,—or, in other words, the court required plaintiff to show title in Bostwick before it would admit the deed.   The plaintiff failing to do this, judgment was given for the defendant, which, on appeal, was reversed by this court on the ground the ruling of the circuit court in the respect stated was improper.   In disposing of the case here, it is said: "The first objection to the deed as evidence was, that it was not, it is insisted, connected with a source of paramount title.   On the contrary, it is urged that

the evidence showed that the parties claimed title from Bost-wick as a common source. In the action of ejectment it is held that where both parties claim under the same right, the plaintiff is not required to trace his title back beyond the common source. When it is found defendant has purchased by deed, and is in possession of the premises, it is *prima facie* evidence that he claims under that title; and if he and plaintiff claim from the same source, it is not necessary for the latter to trace his title further in the first instance. When he exhibits a title from the same source, better than that of the defendant, it is sufficient to put him on his defence. The defendant may, however, show that he claims under a different title, or he may show a paramount outstanding title, to defeat a recovery. In this case it was sufficiently shown that both parties claimed from common source, to authorize the reading of the deed in evidence, and the court erred in excluding it from the jury."

In *Huls* v. *Buntin*, 47 Ill. 396, the evidence showed that Huls, the plaintiff, claimed the premises in dispute from one Shaw through his heirs, while the defendant claimed from him through his administrator, under a sale authorized by° a decree of court. The plaintiff, to make out his own title, introduced a deed from Shaw's heirs to himself, and made proof of their heirship, and then, as was done in this case, introduced the record of the proceedings by the administratrix to sell the premises in controversy to pay debts, culminating in a deed by her to the defendant. This proof having been made, the plaintiff rested. The record of the proceedings by the administratrix to sell the land, showed, in that case, as it does in this, that the court failed to obtain jurisdiction of the defendant, and that consequently the administratrix's sale, and the deed founded thereon, conferred no title. This being developed, the defendant then set up the conveyance as color of title, only, and proceeded to make out a defence under the Limitation act of 1839. The plaintiff then offered to show

in rebuttal the minority of the heirs, but the court rejected the evidence because it was not offered in chief, and judgment was given for the defendant. The judgment was reversed by this court on the ground the evidence was improperly excluded. That case, in many of its features, is much like the case before us, and well illustrates both the law and former practice in cases of this kind. It will be observed all the plaintiff proposed to prove, in addition to what had been shown in chief, was the minority of the heirs. It is clear, therefore, if the evidence offered would not have changed the result,—or, in other words, entitle the plaintiff to recover without showing title in Shaw,—this court would not have reversed the judgment. The case also shows that for the purposes of the rule permitting the plaintiff to introduce evidence to prove the defendant claims from a common source of title with the plaintiff, it is no objection to the exercise of this right that the evidence offered also proves the defendant's title to be worthless. It was so in that case, as well as in the present.

It is clear, upon the authority of the cases cited, that under the law as it stood before the adoption of the 25th section of the Ejectment act of 1872, the plaintiffs in this case, upon the facts shown, were entitled to recover, and the only question now is, whether the common law is so modified by that section as to require a different result. That section is as follows: "If the plaintiff, or his agent or attorney, will state, on oath, upon the trial, that he claims title through a common source with the defendant, it shall be sufficient for him to show title from such common source, unless the defendant, or his agent or attorney, will deny, on oath, that he claims title through such source, or will swear that he claims title through some other source." Here, the defendants did swear that they claimed through some other source, and specified the chain of conveyances upon which they relied; but in their specification they did not, as the evidence abundantly demonstrates, disclose the source or beginning of the chain, and this the

plaintiffs did for them, thereby bringing the case within the rule as it existed before the statute.

The question then arises, was it the purpose of the legislature in adopting this section of the statute, to hold the plaintiff absolutely bound by the denial of the defendant, where a counter-affidavit is filed, and thereby cut off his common law right to show that the two chains of title run back to a common source? We think not. On the contrary, we are of opinion that the object, and sole object, of the legislature in its adoption, was to relieve the plaintiff, in cases of this kind, from the burden of proving the defendant's chain of title as well as his own, unless the defendant would deny, by counter-affidavit, that he claimed from the alleged common source of title, in which event the burden still remained upon the plaintiff, just as it did before, of proving both chains of title, running back to a common source. That the plaintiffs did in this case. To construe the statute otherwise would be to repeal, by mere implication, a rule of the common law of great convenience and highly promotive of justice. Courts never do this unless the implication is absolutely imperative. It is well said in Potter's Dwarris on Statutes, page 185: "As a rule of exposition, statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified and besides what has been plainly announced, for if parliament had had that design, it is naturally said they would have expressed it." To give the statute the construction contended for, would be violative of the rule of construction here so clearly and forcibly laid down. Had the defendants offered evidence of possession and payment of taxes under their color of title, so as to make out a *prima facie* defence under the statute, as intimated in their affidavit they were able to do, the plaintiffs would

then, under the rule announced in *Huls* v. *Buntin, supra,* have had the right to show the minority of the plaintiffs, or any other legitimate matter, by way of reply, which, in law, would be a sufficient answer to the *prima facie* defence so made out. Suppose the plaintiffs in this case had filed no affidavit, but had gone on, according to the old practice, and proved, just as they did, the two chains of title terminating in Smith. It is clear, under the authorities cited, the plaintiffs, upon the facts proved, would have been entitled to judgment. This will not be denied. Surely, then, the filing of the conflicting affidavits by the parties (which do not tend to prove the case upon the merits, the one way or the other,) can not change the force and effect of the evidence before the court to such an extent as to require a wholly different judgment. The very statement of such a proposition demonstrates its unsoundness.

It follows from what we have said, the circuit court erred in finding for the defendants. The judgment will therefore be reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Judgment reversed.*