John Stave et al., Appellees, v. The Great Atlantic & Pacific Tea Company, Appellant.

Gen. No. 34,946.

Opinion filed June 22, 1931.

ASHCRAFT & ASHCRAFT, for appellant; RUSSELL F. LOCKE, of counsel.

Krinsky, Levitan & Glassner, for appellees.

Mr. Justice Matchett delivered the opinion of the court.

This is an appeal by defendant Tea Company from a judgment for $140 entered upon the finding of the court.

The statement of claim alleges that about May 1, 1928, plaintiffs and defendant entered into a written lease (which was attached to and made a part of the statement of claim) whereby plaintiffs demised to defendant premises described as 7050 Crandon avenue, Chicago, for a term to expire April 30, 1930; that at the expiration of the term defendant held over and continued to use the premises and paid rent for the months of May and June, and that by virtue of the terms of the lease rent for July in the sum of $140 was due, which defendant refused to pay.

The affidavit of merits admits the execution of the lease, the occupation of the premises, and the payment of rent as alleged; but denies that rent for July was due by virtue of the terms of the lease; avers that pursuant to said terms, defendant on April 12, 1930, by a writing served upon plaintiffs, terminated the lease and on July 1, 1930, vacated the premises.

At the close of the evidence, at the request of plaintiffs, the court held as facts that defendant held over at the expiration of the lease and plaintiffs as landlord elected to hold defendant as a year to year tenant; that under the evidence defendant held over as a tenant on the terms described in the lease for the additional term of one year from and after April 30, 1930. The court further held as a matter of law that when a tenant holds over after the expiration of his lease, at the election of the landlord he should be treated as a tenant or a trespasser, or might be considered as a tenant from year to year.

Defendant objected to the findings of fact and of law as made by the court and made a motion to set aside the findings and assessment of damages and for a new trial and a motion in arrest of judgment, all of which were overruled.

There is practically no dispute as to the facts. The lease under which defendant held the premises was admitted in evidence and provided:

"The lessee, by continuing to occupy the leased premises, after the expiration of the original term of its tenancy hereunder, or after the expiration of any renewal period thereof, except the last of said periods, shall be deemed and considered to have elected to avail itself of its then current right to renew this lease unless it shall have clearly and unequivocally manifested a contrary intention."

While in possession under the lease, on April 12, 1930, defendant wrote to the agent of plaintiffs:

"It is necessary that we vacate the store room at 7050 Crandon avenue, Chicago, Illinois.

"We shall appreciate it very much if you will advise us to whom, when and where you desire us to deliver the keys of said premises upon vacating same.

"We thank you for a reply to this letter at your earliest convenience."

Plaintiffs made no response to this letter, and defendant continued in possession of the premises after the last day of April, 1930, when the lease expired.

May 5, 1930, the attorneys for plaintiffs wrote defendant, stating in substance that their clients had not received "remittance for your rent for the month of May, 1930, for the premises at 7050 Crandon avenue," and asking if defendant would be kind enough to make remittance. May 12, defendant replied:

"Your communication of May 5, 1930, addressed to the Tea Company at 7050 Crandon avenue has just been received by the writer, and we wish to confirm our

advice to the agents of the above property that we will send them a check in the amount of the rent due them for the use of the above store during the temporary period in May.

"At the present writing we do not know just when it will be convenient for us to vacate this store but expect that in a very few days we will be able to move. If this is working a hardship on the owners or if it is inconvenient to them, we can move immediately and will do so.

"We appreciate your co-operation and trust that the suggested arrangement will be satisfactory to all concerned."

This letter was noted "Atten. Mr. James J. Glassner." May 13, attorneys for plaintiffs replied that the letter was received in the absence of Mr. Glassner, who would return the next Monday, and added, "You will undoubtedly hear from him on this subject at that time."

On July 2, defendant wrote the agent of plaintiffs:
"Re: 7050 Crandon avenue.

"Our Mr. MacKenzie delivered the keys for the above store to your office on Monday, June 30.

"We are writing to advise you that we have entirely vacated the premises. At the time we notified you of our intention to vacate, we did not anticipate remaining in possession of this store after May 1, but by reason of our delay in getting possession of our new store, it was necessary to remain where we were.

"We did so believing that due to our past pleasant relations with the owners there would be no objection. We are of the opinion that our remaining in the store room did not cause any loss to the owners and do not feel that we ought to be penalized double rental, but if the owners insist, we are perfectly willing to pay you as provided by law,"

July 9, 1930, attorneys for plaintiffs acknowledged receipt of this letter, which had been forwarded to them, and said:

"As we previously advised your Mr. Clark, our clients take the position that you are holdover tenants, and liable for one year's rent. Accordingly, we must insist that payment of the July rent, which is now past due, be made."

The rent for May and June was paid by the check of defendant for the sum of $280. It is agreed that after July 1, 1930, plaintiffs gave instructions that a "For Rent" sign should be placed on the outside of the premises, and evidence was offered in behalf of defendant tending to show that sometime between May 1 and 15, 1930, a "For Rent" sign was placed in the window of the premises, and that it was placed there by someone representing himself to be the agent of plaintiffs. There was also evidence tending to show that this sign had been seen by one Arthur Martin between May 1 and May 15, and that the sign bore on it the name of the agent of plaintiffs.

On the other hand, one of the plaintiffs testified that immediately after being notified of the letter of April 12, 1930, he placed a sign in the window of the premises; that he thought one of the boys took the sign down, and that one of the managers of the A. & P. Company put the sign in the store; that he thought the sign was put up sometime before May but he did not know the date because he himself did not put it up. On cross-examination he stated that he did not remember whether he pulled the sign off the window or directed the store manager to take the sign down. He testified in rebuttal that the sign was at the time of trial still in the window of the premises.

Defendant contends in the first place that as a matter of law where a tenant has given notice of his intention to quit the premises at a time mentioned in

the notice at which the tenant would have a right to quit by the lease and does not deliver up possession thereof accordingly, such tenant is liable to pay to the landlord double the rent or sum which would otherwise be due, and that the landlord has no election to hold the tenant for a further term by virtue of the tenant's holding over after the expiration of his lease. This proposition of law is based upon defendant's construction of section 3 of the Landlord and Tenant Act (Cahill's Ill. Rev. St. 1929, ch. 80, ¶ 3), which provides as follows:

"If any tenant shall give notice of his intention to quit the premises by him holden, at a time mentioned in such notice, at which the tenant would have a right to quit by the lease, and shall not accordingly deliver up possession thereof, such tenant shall pay to the landlord or lessor double the rent or sum which would otherwise have been due, to be collected in the same manner as the rent otherwise due should have been collected."

Defendant argues that this provision of the statute is mandatory and creates an obligation upon the tenant at all events and under the conditions determined by his occupancy of the premises, to pay double rental and also creates a reciprocal obligation upon the landlord to accept the obligations of double rental as imposed by the statute. In other words, defendant contends that this section creates an exclusive remedy which is obligatory on the landlord and changes the well known rule of the common law to the effect that when a tenant holds over without right, the landlord may at his option treat him as a trespasser or as a tenant for another term. (*Clinton Wire Cloth Co. v. Gardner,* 99 Ill. 151; *Goldsborough v. Gable,* 140 Ill. 269; *Condon v. Brockway,* 157 Ill. 90.)

Plaintiffs contend that the statute in question does not change the rule of the common law, but grants an

additional and cumulative right, and they cite a number of authorities which state in substance the rule to be that where a statute grants a right or remedy other than that given by the common law but does not expressly by its terms or necessarily by implication supersede or limit the common law, such right or remedy is held to be additional and cumulative. This proposition would hardly seem to need the citation of authorities. A few of the cases so holding are *Cadwallader v. Harris,* 76 Ill. 370; *Smith v. Laatsch,* 114 Ill. 271; *Mackin v. Haven,* 187 Ill. 480; and *People v. Clark,* 268 Ill. 156.

The argument of defendant is not convincing. We are not referred to any case which construes section 3 of the statute in conformity with this contention, but defendant cites a number of cases, e. g., *People v. Abbott,* 274 Ill. 380, where a statute had been enacted directing that money should be set apart to constitute a pension fund and the word "shall" was used in that connection. It was held that the word should be construed as mandatory. Defendant also cites *People v. Hoffman,* 236 Ill. App. 1, where the word "shall" as used in a statute prescribing punishment for the crime of larceny was held mandatory. The distinctions between such cases and a statute purporting to define the rights of landlords and tenants are too obvious to require discussion.

Defendant says, however, that if the landlord is not bound reciprocally with the tenant, then it is apparent that the legislature made an absolutely futile gesture in the enactment of section 3, since the landlord already had his remedy by virtue of the provisions of section 2 of the same act. Section 2 makes tenants or others in possession liable for double rent in case of a wilful holding over after a demand for possession in writing by the landlord. Section 3 gives the landlord the right to collect double rent against one who, being

a tenant under a lease, notifies the landlord he will vacate but fails to do so. The distinction between the two sections is clear. The section is not a ''futile gesture'' but grants merely an additional and valuable right and remedy.

In the second place, defendant contends, that assuming section 3 does not change the rule of the common law, the presumption that a tenant holding over after the expiration of a yearly term is a tenant from year to year is rebuttable, and that where the evidence shows that a tenant holds over under an agreement with the landlord that the tenant shall pay rent for the period of his occupancy only, then the tenant becomes a tenant at will and cannot be held for rental for any period after surrender of the premises to the landlord. Defendant cites *Peck v. Christman*, 94 Ill. App. 435; *Weber v. Powers*, 213 Ill. 370, and other cases. There is no question that such an agreement might have been made, but this record is entirely bare of any evidence tending to show that defendant held over pursuant to any such agreement. Not a scintilla of evidence appears in the record which tends to show any negotiations prior to May 1, 1930, looking to the further occupation of the premises. Defendant says:

''We ask the court to consider this letter of May 12th and while admitting that the letter is a self-serving declaration, we confidently believe that in seeking to determine the intention of the landlord with respect to his tenant in this regard, this court will consider the letter of May 12th as having great probative value in that the letter confirms advices previously given to the agents of the property involved to the effect that the defendant purposed to occupy the premises for a temporary period in May.''

We have searched the record in vain for evidence of these ''advices'' previously given to the agents of the property, and if such advice had been given, the

evidence must have been easily available to defendant. On the other hand, the letter of July 2, 1930, written after the controversy had arisen (and it is fair to infer under legal advice) states that defendant did not anticipate remaining in possession of the store after May 1st but found it necessary to do so. The letter also practically acknowledges a holding over without right by stating that while defendant does not feel it ought to be penalized by paying double rent, it is perfectly willing to pay "as provided by law" in case plaintiffs insist defendant should do so.

On the uncontradicted facts appearing in this record, we think defendant held over without any agreement or understanding with plaintiffs, and that under the well known rules of the common law and the statute, plaintiffs had three possible elections—To hold defendant (1) as a trespasser, (2) as a tenant for another term, (3) under the statute for double rent during the time it was in possession of the premises. Plaintiffs elected to hold defendant as a tenant for another term at the same rental. This they had a right to do.

The judgment is affirmed.

*Affirmed.*

O'Connor, P. J., and McSurely, J., concur.