**EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. MALLERS et al.**

**EATON et al. v. MALLERS (two cases).**

Nos. 6787, 6788.

Circuit Court of Appeals, Seventh Circuit.

April 19, 1939.

Rehearing Denied June 6, 1939.

568

Harris F. Williams, Robert C. Baumgartner, Adelor J. Petit, and Adelor J. Petit, Jr., all of Chicago, Ill., for appellants.

Frederick A. Brown and L. M. Hirschtritt, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from an order entered by the District Court in an interpleader suit brought by the plaintiff insurance company to determine the ownership of four policies of insurance, only two of which are involved in this appeal.

The plaintiff insurance company had issued the four policies on the life of John B. Mallers, Jr., payable to his wife, Jennie Eaton Mallers. The policies were of the ordinary life plan, with a special absolute ownership right in the beneficiary. Jennie Eaton Mallers predeceased her husband and her estate succeeded to her interest under the policies. Mollie Eaton duly qualified as executrix under the will of Jennie Eaton Mallers.

The inventory of the estate showed assets of $1,900.95 in cash, other personal property of the value of $2,018.50, and other assets of questionable value. The estate included four policies of insurance in addition to the four above referred to. The annual premiums payable for each policy amounted to $1,250, less dividends per policy. Because of the small amount of assets and lack of current estate income the executrix, Mollie Eaton, found it impossible to pay the premiums as they became due. She was forced to cancel four policies not involved in this suit, and take their cash surrender value.

On September 21, 1933, premiums became due on two policies and the insurer applied accrued dividends in the amount of $481.50 to payment of the premiums, thus keeping the policies in force until January 10, 1934. On January 8, 1934, Mollie Eaton, executrix, assigned the two policies to John B. Mallers, Jr. The cash surrender value of the policies as of that date was less than ten ($10) dollars and they would have expired within two days. The assignments were made in writing which recited as consideration thereof $1 paid and other good and sufficient consideration. Mallers promised to pay to the estate the amount of the dividends ($481.50) which had been applied to the payment of premiums to keep the policies in force until January 10, 1934.

The assignee, John B. Mallers, Jr., continued to keep the policies in force by payment of premiums and the policies were in force on the day of his death on July 10, 1934. Charles E. Mallers qualified as executor under the will of John B. Mallers, Jr., and he has continued to act as executor from that time. Mollie Eaton, as executrix of the estate of Jennie Eaton Mallers, and Charles E. Mallers, as executor of the estate of John B. Mallers, Jr., filed claims for the proceeds due under the four pol-

icics of insurance. The insurance company, plaintiff herein, filed its interpleader suit against all claimants and paid the proceeds of the policies into court. Thereafter an interlocutory decree was entered by the District Court dismissing out the plaintiff insurance company, [1] and the cause proceeded before the District Court for determination of the rights of the respective claimants. The District Court found in favor of Charles E. Mallers, executor of the estate of John B. Mallers, Jr., on his claim for the proceeds of the two assigned policies, and in favor of Mollie Eaton, executrix of the estate of Jennie E. Mallers, on her claim to the proceeds of the two unassigned policies. Judgment was rendered accordingly. This appeal is from the judgment rendered in favor of Charles E. Mallers, Executor.

The contention of defendants-appellants may be summed up as follows:

1. The assignments of the policies to John B. Mallers, Jr., are void because (a) they were made without prior authorization or subsequent confirmation by an order of the probate court, and (b) because they were made without consideration.

2. The assignments are voidable for the following reasons:

(a) A personal representative cannot sell personal property belonging to an estate on credit;

(b) It is beyond the power of a personal representative to bind the estate by contract, and

(c) A personal representative cannot give away property belonging to an estate.

The first proposition involves provisions of the Illinois statutes regulating the sale of personal property in course of administration of estates. [2] The statute provides for public sale and in addition thereto includes the following clause which is more particularly involved in this suit: "Provided, that any part or all of such personal property may, where so directed by the court, be sold at private sale."

It is the contention of defendants that the foregoing requires an order of court as a condition precedent to the sale of personal property by private sale. This precise question has not been decided by the Supreme or Appellate courts of Illinois, but it is unquestioned that under the common law of Illinois a sale without approval of the court "to a bona fide purchaser for a valuable consideration" is valid. The sale can be avoided, if the purchaser knew, or "had good reason to suspect that the sale is made with a design to misapply the funds to the prejudice of those interested in the estate." [3]

In the case of Christy v. Christy, [4] the heirs at law appealed from an order of the circuit court overruling their exceptions to a report of the administrator on the sale of certain shares of stock. The heirs contended that the price obtained therefor was not adequate. The sale was made without order of the probate court. In affirming the circuit court, but without specific mention of the statute here involved, the Appellate Court said: "It is unquestionably true that, except in rare cases, it is proper and advisable for an administrator, before selling the personal property of his intestate, to obtain authority from the probate court so to do, thus protecting himself, where he has acted in good faith, from the charge of a lack of diligence in obtaining a fair price therefor, but our attention has been called to no authorities holding that a failure to do so imposes upon him a greater degree of diligence than he would be otherwise bound to exercise." The foregoing decision was affirmed by the Supreme Court of Illinois, [5] but the Supreme Court stated that "the question as to the legality of the sale as between the purchaser and heirs" was not presented "either upon propositions of law submitted or otherwise."

In Zimmerman v. Dawson [6] complainant sued an executor of an estate to compel the specific performance of an agreement to convey a leasehold interest in real estate which under the law of Illinois was considered personal property. The parties had

---

[1] An appeal was taken to this Court from the interlocutory decree and the decree was affirmed. Mallers v. Equitable Life Assurance Society of the United States, 7 Cir., 87 F.2d 233, certiorari denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343.

[2] Illinois Revised Statutes, 1937 Ed. Ch. 3, §§ 92, 93, 94.

[3] McConnell v. Hodson et al., 2 Gilman 640; Dwight v. Newell, 15 Ill. 333; Makepeace v. Moore, 10 Ill. 474, 5 Gilman 474; Walker v. Craig, 18 Ill. 116.

[4] 125 Ill.App. 442.

[5] 225 Ill. 547, 80 N.E. 242, 243.

[6] 222 Ill.App. 212.

agreed that the sale was to be subject to the approval of the probate court. The probate court refused to allow defendant to accept the complainant's bid, and further ordered the property to be sold at a public sale. The Appellate Court held that the bill for specific performance could not be maintained. In support of its decision the court makes the following statement: "It is our opinion that the subject-matter of this suit constitutes personal property which could be sold by the executor only upon approval of the probate court, and also that the evidence introduced on the trial warranted the chancellor in concluding that, whatever may be said as to the character of the property in question, it was agreed by complainants and defendant that the proposed sale thereof was not to be consummated until approved by the probate court of Cook county."

In view of the facts the decision cannot be said to constitute a holding that an executed sale is void where there is no order of the court forbidding it.

Statutes providing for court supervision of sales of personal property in the course of administration of estates have been construed by courts of some states to require approval as a condition precedent to sales, and in other states to be merely directory and for the protection of the administrator and not to affect his power to pass good title. The latter effect has been attributed to such statutes in Iowa, Massachusetts, Nebraska, New York, North Carolina, South Carolina, Vermont and Wisconsin.[6a] In states, such as Illinois, in which the common law rule unquestionably allows such sales and in which statutory provisions do not expressly repeal the common law rule, the inquiry is whether the language of the statute repeals the common law rule by implication. In some cases it is clear by the language used in the statute that the common law no longer applies. Such a case is presented in Interstate Public Service Company v. Weiss, Administrator.[7] In that case the Supreme Court of Indiana held that the transfer of certain shares of stock by an executor without a court order was void. The pertinent language of the statute applicable to the facts of that case is as follows: "Whenever any portion of the estate of any person dying intestate shall consist of stock in a corporation or corpora-tions, and when any person shall die testate owning such stock but making no disposition thereof in his will, the same shall not be sold except under the direction of the proper court; and in the distribution of the estate of the decedent among his heirs or legatees, such stock shall be distributed and transferred to them under the direction of the court." (Section 6-805, Burns' Ann.St. 1933.) The language of the Indiana statute reveals a definite legislative purpose to preserve corporate stock for distribution in kind among heirs or legatees; and in order to accomplish this it is necessary to qualify a personal representative's power to pass title to third persons. When the strong language of prohibition is viewed in the light of the evident purposes, the legislative intent to require approval as a condition precedent to sale is evident. The purpose of the Indiana statute was not primarily to protect the interest of the estate from improper sales, but, for the special benefit of heirs and legatees, to prevent sales, proper or improper, of a particular type of property.

The language of the Illinois statute is of the more general type which has been held to be directory. And although the Supreme Court of Illinois has not construed the language in question, the Appellate Court of Illinois in its opinion in Christy v. Christy, supra, stated that it saw no reason "why he [administrator] had not the power to pass such title at private sale, if made in good faith, although without an order of court." That the foregoing statement embodies the rule in Illinois under the statute is strongly indicated by the declarations and holdings of the Supreme Court of Illinois on the question of statutory repeal of common law rules by implication.

By legislative enactment the common law of England "shall be considered as of full force until repealed by legislative authority."[8] Illinois decisions hold that repeal by implication is not to be recognized "unless the implication is absolutely imperative."[9] In the recent case of People v. West Englewood Trust & Savings Bank[10] the court states that "it is only where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former be considered repealed

---

6a 24 C.J. 209.

7 208 Ind. 122, 193 N.E. 226.

8 Illinois Revised Statutes Ch. 28, Sec. 1 (1937).

9 Smith v. Laatsch, 114 Ill. 271, 279, 2 N.E. 59, 63.

10 353 Ill. 451, 460, 187 N.E. 525, 529.

by implication"; and that "it is not enough to justify the inference of repeal of a prior statute that a subsequent statute covers some, or even all, of the questions covered by the former;" and that "there must be an irreconcilable repugnancy."

■ Applying the foregoing severe test to the statutory language in question we conclude that the language does not repeal the Illinois common law rule. Our conclusion is reinforced by the statement of the Appellate Court of Illinois in the Christy case.

■ The trial court found that the assignments were free from fraud and the facts clearly support such finding. At that time the two policies were imposing a premium burden of $2,500 a year on the estate, the total assets of which were valued at less than $4,000. Also the estate was attempting to carry eight policies requiring approximately $10,000 a year in premiums. The two policies in question would have lapsed within 48 hours, and had a cash value of something less than $10. From the standpoint of the executor it was evident that it would be necessary to allow some or all of the policies to lapse, and four of the eight policies were cancelled at a later date. It had been necessary in the preceding September to apply available dividends to keep the two policies in force until January 10, 1934. In addition to her own judgment the executrix had the benefit of legal counsel, and the terms of the transfer to John B. Mallers, Jr., were in accordance with the views of her legal adviser. No question is raised respecting the finding of facts and the facts as found disclose no basis for a conclusion that any other course was available to the executrix to salvage anything from the two policies.

■ It is also urged that no consideration was given for the assignments and that the assignments were in effect a giving away of assets of the estate. The no-consideration contention rests ultimately upon the assumption that John B. Mallers, Jr., assumed no obligation whatever for the reason that his promise was illusory. It is urged that his promise reduces itself finally to a promise to pay $481.50 if he chooses to keep the policy in force for one year from date of September 21, 1933. The finding of the court respecting consideration is not susceptible of such a loose interpretation. The full finding is as follows: "10. That the consideration for the assignment

of said policies Nos. 3905106 and 3907784 by Mollie Eaton as Executrix aforesaid to John B. Mallers, Jr. was a promise by the assured to pay to Mollie Eaton, as said Executrix, the amount of the dividends which had been applied on said policies to extend as far as possible the life of the said policies from September 21, 1933, to January 10, 1934, said dividends amounting to Two Hundred Forty and 75/100 Dollars ($240.-75) on each of said assigned policies, or a total of Four Hundred Eighty-one and 50/100 ($481.50), provided that said John B. Mallers, Jr. should keep said assigned policies in force for a period of one year from date of September 21, 1933."

■ The finding is more readily understood to be that the assignment is conditioned upon the assignee's keeping the policy in force for a period of one year. But if it be interpreted to mean that John B. Mallers, Jr., will not be required to pay the $481.50 unless he keeps the assigned policies in force for a period of one year, it is a condition subsequent and the fact is that he did keep the assigned policies in force for the required period and his promise became absolute and binding upon his estate. It cannot be contended that keeping the assigned policies in force for a period of one year was a condition precedent to Mallers' giving his promise to pay the $481.50. At most it was a condition precedent to the performance of his promise by actual payment of the amount promised.

■ The remaining question is whether a sale to a co-beneficiary is valid. In this connection it should be noted that under the will of Jennie Eaton Mallers the deceased left all of her property except certain articles here not material, to her three sisters, Mollie Eaton, the executrix, Sadie D. Eaton, and Eva E. Coombs. John B. Mallers, Jr., the deceased's husband, received nothing by the terms of the will, but under the law of Illinois was entitled, and did elect, to take his dower interest in the estate, which amounted to one-third of the personalty. As respects some aspects of the situation John B. Mallers, Jr., and the executrix clearly were dealing at arms length. But for purposes of our discussion we shall assume that the sale in the instant case was one by a trustee to a beneficiary. It is the general rule that anyone, including a co-beneficiary, may buy. [11] The general rule is aptly stated as follows: "1. To whom

---

[11] 24 C.J. 217.

sale may be made: If the trustee has a power of sale, he can properly sell to one of the beneficiaries, provided that the sale is in all other respects proper. Since it is the duty of the trustee in selling trust property to sell it at the best price obtainable, he cannot properly sell it to one of the beneficiaries without the consent of the others for less than its fair value, since this would be a violation of his duty to the other beneficiaries." [12]

In the case of Fredrick v. Fredrick, [13] the court held that a conveyance of trust property by the trustee could be set aside where it was conducted in secret, without notice to other beneficiaries, and for a low price. But where a valid and sufficient consideration for the conveyance was shown the Supreme Court of Illinois held the trial court properly refused to set the sale aside even though it was to a cestui. [14]

The utmost of good faith must be shown throughout all transactions in which the trustee is dealing with a cestui. [15] In the instant case the District Court found that there was no evidence of fraud, collusion or bad faith. The District Court was convinced that the estate of Jennie Eaton Mallers was financially unable to meet the premiums and that if the assignments had not been made the estate would have lost everything. Instead the estate received Mallers' promise to pay $481.50 and at a time when the cash surrender value was only $10 and when the estate's interest in the policies, as a beneficiary, in all human probability would have been wiped out completely within 48 hours. There is nothing in the finding of facts to suggest that any of the co-beneficiaries was in a position, or would have been willing, to purchase the policies or to aid in saving them for the estate. In considering the question of fairness it is not without significance that John B. Mallers, Jr., the assignee, had furnished the money to Jennie Eaton Mallers during her lifetime to pay the premiums which had kept four policies in force prior to Jennie Eaton Mallers' death. The court so found but also properly stated as a conclusion of law that such advancement to pay premiums did not give Mallers or his executors any right in or to the proceeds of said policies. During the lifetime of John B. Mallers, Jr., the assignee, no interested party took any action in the probate court to question the assignments. In the present action the objectors' position is somewhat anomalous. They ask that the assignments to Mallers be set aside and yet ask for the fruits of Mallers' performance of his obligation under the assignment agreements. It is not the case of a beneficiary's asking that a transaction between the trustee and a co-beneficiary be set aside and the trust property, or its value, be restored to the trust assets; but under the facts the relief sought is an enrichment of the trust assets to the extent of the windfall advantage which came to Mallers' estate by reason of the early death of John B. Mallers, Jr. On the basis of the facts as found the actual value of the assets given up by the estate as a result of the assignments was $10. In return for that it secured the obligation of the assignee to pay $481.50. There is no evidence that the executrix or anyone else had any reason to anticipate the early demise of the insured. From the standpoint of the estate the assignments were relieving it from an obligation to pay approximately $2,500 a year, and at a time when the estate obviously was unable to carry the premium burden of the policies which it held. Clearly the District Court was justified in its finding that there was no fraud in the procuring of the assignments and "that said Mollie Eaton as executrix as aforesaid exercised good judgment in making said assignments, and that they were for the benefit of the Estate of Jennie Eaton Mallers, Deceased."

It is contrary to the facts to say that any loss was sustained by the beneficiaries of the trust as a result of the assignments.

The judgment of the District Court is affirmed.

---

[12] Restatement of Trusts, Sec. 190 (1).
[13] 219 Ill. 568, 76 N.E. 856.
[14] Palliser v. Mills, 339 Ill. 568, 171 N.E. 618.

[15] 3 Bogert, Trusts and Trustees, § 493.