EVALINE SMITH

*v.*

ALTA M. DENNIS *et al.*

*Filed at Ottawa November 9, 1896.*

WILLS—*what is included in devise of testator's "homestead."* A devise of the testator's "homestead" to his wife does not carry a second house, with separate outbuildings, on the same city tract with the testator's residence, though no fence or surveyed line separates the two, where the testator had treated the properties as distinct, renting the one in which he did not live, and recognizing by acts, though never formally establishing, a dividing line between them.

APPEAL from the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding.

Thomas Smith, of Galva, Henry county, this State, died testate on February 1, 1893. He left surviving him appellant, his widow, and an infant daughter, Cecil, and also appellees,—four adult daughters by a former wife. By his last will he disposed of his property as follows:

"*First*—I give and bequeath to my beloved wife, Evaline Smith, my homestead during her life, and all of my

household and kitchen furniture, of every kind and description, to her sole use.

"*Second*—I give and bequeath to my wife, Evaline Smith, in trust for the support of my daughter Cecil Smith, fifty dollars per year until she shall become of the age of eighteen years.

"*Third*—I give and bequeath to my wife, Evaline Smith, and my daughters, Lucinda Scott, Ida B. Reynolds, Carrie J. Lane, Alta M. Smith (now Dennis) and Cecil Smith, the remainder of my real and personal property, goods and chattels, of what nature or kind soever, to be divided equally between them, share and share alike, after all of my debts and funeral expenses are paid and the foregoing legates are settled."

The adult daughters filed this bill for partition, making the widow and her infant child defendants.

At the date of the will, and when he died, the testator owned a part of block 19, in the village of Galva, fronting west on Church street one hundred and seventy-five feet, extending north to First street, running due east and west, and south to Main street, running back eighty-eight feet on First street and about one hundred and forty-six feet on Main, the latter street extending in a north-east and south-west direction. The testator had purchased this property as sub-lots, platted irregularly, without streets or alleys, numbered from 8 to 14, inclusive. At the time he bought it there was a frame house on the south-west corner, fronting on Church street, which had been built without reference to the sub-lots, part of it being on sub-lot 13 and part on sub-lot 14. A well had been dug a short distance north, on sub-lot 12, and in a northeasterly direction, back from the house, were a closet and coal house on another sub-lot. Soon after the purchase he erected a dwelling house on the north-west corner of the property, also fronting on Church street. This house occupied parts of sub-lots 9, 10 and 11. A new coal house and closet were built for this new

residence.   Testator moved into the new house upon its completion and continued to reside there until his death. The well was used for both the old and the new buildings. Deceased never occupied the old house, but rented it for a hotel, restaurant and other purposes.

The principal controversy between the parties here is as to how much of this property passed to the wife under the first clause of the will.   Complainants allege in their bill that she is entitled only to the family residence in the north-west corner, with so much of the land as lies north of a certain line running northeasterly through the property, some sixty feet north of the southeastern line, thus setting off a lot of about that width, with the closet, coal house and the well used with her dwelling.   The widow claims the whole property.

On the hearing the circuit court found with the complainants, and ordered that the widow is entitled to the dwelling house and the above described portion of the ground, valued at $2500, for life, and that the minor child, Cecil, is entitled to a statutory homestead therein until she arrives at the age of twenty-one years, and ordered partition of the remainder of the real estate of which the testator died seized, including that part of said block 19 lying south of said line set off with the old house, but expressly decreeing that partition of the said homestead be not made.   From that decree this appeal is prosecuted.

JOHN ROOT, and N. F. ANDERSON, for appellant.

E. A. CORBIN, and THOMPSON, SHUMWAY & WASSON, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is insisted by counsel for appellant that the division of the property as made by the court below is an arbitrary one, unsupported by the evidence, and they contend that by the terms of the first clause in the will the widow took, as the *homestead* of her deceased husband,

all of the property described in block 19. We think it must be admitted that at the time of the execution of the will and at the death of the testator he owned two distinct pieces of property in block 19,—that is to say, there were two distinct houses and two sets of out-houses on the block. That which renders the meaning of the testator uncertain as to whether he meant to give his wife a life estate in only a part or the whole of the land, arises from the fact that these two distinct pieces of property were not separated by any street, alley or lot line. If a line had been platted where the court fixed it by its decree, or if the testator had, prior to making his will, established that line by building a fence thereon or staking it off, no one would hesitate to say that by the language "my homestead" he meant only that part of the property north of the line. No question is made as to the competency of the evidence tending to show that, notwithstanding that line was not established by any physical act on his part, he recognized it as the dividing line. Without reviewing the evidence bearing upon that question, we think it satisfactorily shows that he treated the two houses and appurtenances as distinct property, and that in renting the old house, through his agent, he let with it a certain amount of ground, including that on which the closet and coal house stood, and the evidence of the agent is to the effect that so much of block 19 as lies south of the line fixed by the court was treated as belonging to that house. The water-closet built and used in connection with that house could only be set apart with it by drawing the line where the court established it, the north side of the closet being substantially on that line. Neither could the water-closet built and used in connection with the new house be set apart to it without so fixing the line, the south side of that closet also being on or very near the line. We think the mere fact that the well connected with the old house was used by the family occupying the new one is not a controlling

consideration in determining what part of the property the testator treated as belonging to his homestead. The well was appurtenant to the old house, and was used simply for convenience with the new one. In fact, the evidence shows that the testator stated that a new well would be provided for his residence in case the other property was sold. The term "homestead," as used in this will, means "the dwelling house at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary and convenient for family use, and lands used for the purposes thereof." (Anderson's Law Dic. 512.) Within this meaning it can scarcely be claimed that the testator intended to will to his wife the two houses, one the family residence and the other a house devoted to other purposes.

We think the acts of the testator in improving the north part of the property, together with the manner in which the south part was rented, sufficiently show his intention to give his wife, as her life estate, only that part of the property decreed her by the circuit court. *Perkins* v. *Jewitt*, 11 Allen, 9; *Brown* v. *Saltenstall*, 3 Metc. 423.

. No substantial error was committed by the court below in the admission or exclusion of testimony.

The point that it was error to decree that no partition should be made of the homestead willed to the wife is, we think, without force. On the pleadings no partition of that part of the estate was asked, complainants in their bill expressly praying that it be not partitioned, and defendants not asking for a partition either in their answer or by cross-bill.

The decree of the circuit court is in harmony with the views here expressed, and it will be affirmed.

*Decree affirmed.*