INTERNATIONAL HARVESTER COMPANY OF AMERICA, Appellant,
v. SELMER BYE, ADMINISTRATOR, et al., Appellees.

**WILLS:** What Embraced in Devise of "Homestead." Extrinsic
facts and circumstances may demonstrate that a testator, in describing a devise as "my homestead property," had in mind, *not the statutory 40 acres where his improvements were situated,* but the entire farm occupied by him as a home, which was much in excess of 40 acres.

PRINCIPLE APPLIED:  See No. 2.

**WILLS:** Identifying Devise. Extrinsic evidence is admissible to identify an imperfectly described devise.

PRINCIPLE APPLIED:  A testator devised, in fee, to his wife, (1) all personal property, (2) *"my homestead property,"* and (3) a life estate in all other realty. To his children he devised the remainder, "except the homestead." An issue arose as to whether the will conveyed to the wife the statutory 40 acres where the improvements were situated or whether the term "homestead" was used in the popular sense of the *entire farm,* occupied by the testator and his family. *Held,* the following testimony was admissible:

That testator's home place consisted of 320 acres; that he, with his family, had lived thereon from a time long prior to the execution of the will, and up to the time of his death; that a public road ran along the east and south lines; that said farm was cross-fenced, but not on the quarter or quarter quarter lines, and was operated as an entirety; that the residence and other improvements, being the only ones on the farm, were situated near the center of the east line, and were of a size and nature suitable for operating a 320-acre farm, as an entirety; that a large grove furnished a wind-break; that no statutory homestead had ever been platted; that testator was of foreign birth, and probably had no particular understanding of the term "homestead," in a statutory sense; that, when the will was executed, he owned 160 acres in an adjoining section, but subsequently

sold it; that, when he died, he owned land in North Dakota.

*Held,* also, that the will conveyed the entire 320 acres to the wife.

*Appeal from Cerro Gordo District Court.*—JOSEPH J. CLARK, Judge.

NOVEMBER 19, 1918.

SUIT to have construed a clause in the will of John Bye, devising "my homestead property." On hearing, this was held to pass the entire farm, rather than the 40 acres on which the dwelling was located. The plaintiff appeals.—*Affirmed.*

*Senneff, Bliss, Witwer & Senneff,* and *Victor A. Remy,* for appellant.

*T. A. Kingland* and *J. F. D. Meighen,* for appellees.

LADD, J.—On November 4, 1914, the plaintiff herein recovered judgment against John Bye, Jr., for $2,800.60 and costs, and on October 26, 1915, obtained another judgment against him for $820.95 and costs. These judgments were obtained in the district court of Winnebago County, and therein levies of writs of attachment on said Bye's undivided interest in the south half of Section 8 in Township 100 North, of Range 23 West of the Fifth P. M., in Winnebago County, were sustained and confirmed. There being doubt as to whether the judgment defendant had any interest in said land, this suit was instituted to have the will under which he took, if at all, construed. It appears that John Bye, Sr., died testate, June 6, 1914, leaving him surviving a widow and eight children, including John Bye, Jr. His will, dated March 18, 1903, duly admitted to probate, gave his wife, in Paragraph 1, all personal property, and gave to his "said wife, Julia Bye, my homestead property to be her property absolutely in fee simple." She

1. WILLS: what embraced in devise of "homestead."

was given, in the second paragraph, "the possession of and rents and profits of the remainder of all real estate that I may be possessed of as long as my said wife is living." The third paragraph reads:

"Upon the death of my said wife, I direct that the real estate herein mentioned, except the homestead and any property not heretofore disposed of, shall be divided equally among my children share and share alike."

It then directed the appointment of his wife as executrix.

John Bye, Sr., died seized of the half section of land above described, and had resided thereon with his family, since and long before the making of his will. At the time the will was made, he also owned 160 acres

2. WILLS: identifying devise. in an adjoining section, but sold that to one of his sons, in 1913. He had some land in North Dakota at the time of his death. The precise issue is whether the words, "my homestead property," contained in the first paragraph of the will, should be construed as referring to the entire half section where decedent lived so long, or merely to the 40 acres on which the dwelling house and buildings appurtenant thereto were located. It will be noted that the subject of the devise is not described otherwise than as "my homestead property," and the introduction of extrinsic evidence was essential for its identification. That such evidence was admissible appears from *Whitehouse v. Whitehouse*, 136 Iowa 165, and *Ellsworth College v. Carleton*, 178 Iowa 845. As observed in the last case:

"The intent of the testator is to be ascertained from the terms of the will, in connection with other legitimate sources of information, and, when ascertained, will, in the absence of some insurmountable obstacle, be carried into effect."

In ascertaining what the testator meant by "my home-

stead property," all facts may be shown which bear there-
on. As remarked in 4 Wigmore on Evidence, Section 2470:

"Once freed from the primitive formalism which views
the document as a self-contained and self-operative formula,
we can fully appreciate the modern principle that the words
of a document are never anything but indices to extrinsic
things, and that, therefore, all the circumstances must be
considered which go to make clear the sense of the words,—
that is, their associations with things. In the field of wills,
where there is none but the individual standard of meaning
to be considered, this principle is seen in unrestricted opera-
tion; and its full sanction has often been judicially
avowed."

In cases like this, evidence of decedent's ownership of
different tracts of land, which he occupied with his family,
the nature and plan of the improvements, how and when
he acquired it, his habit in referring to it, and the like, may
be considered; and all this, not to alter, but to enable the
court to interpret, the language of the will. See 4 Wigmore
on Evidence, Sections 2467, 2471; 1 Underhill on Wills,
Section 211.

Decedent acquired the SE¼ of said Section 8, July 17,
1876, and the SW¼ thereof, June 8, 1888. A public high-
way extends along the east and south line of the farm,
which was operated in its entirety as a stock and dairy
farm. It was cross-fenced, but not on the quarter or
quarter quarter section lines. The house was near the cen-
ter of the east line, and such in size as was suitable for a
farm of the acreage of this,—containing ten rooms. At the
date of the will, there was a granary near the house, with
capacity of 3,000 bushels; a barn large enough for 100 tons
of hay and 50 or 60 cattle and 14 horses; a machine shed,
and the like; and later on, the outbuildings were recon-
structed on a larger scale. A large grove to the north of the
buildings served as a wind-break. From 1892 on, decedent

kept from 50 to 100 head of cattle, 14 to 19 horses, and many hogs, and he had sheep, when he died.  There was but the one set of buildings.  Apparently, no part thereof had ever been handled apart and distinct from the rest of the farm, nor had decedent caused a homestead to be platted, as the statute permitted.  He was of Norwegian descent, and does not appear to have had occasion to deal with the word "homestead" in its technical meaning, as exempt property.  Neither the improvements nor their location in-dicated any thought that a 40 acres had ever been con-templated as constituting a homestead exemption.  The improvements were for the entire farm.  The 40-acre tract was not separately fenced, platted, or occupied.  The im-.provements were not suitable for so small a tract, but were such as required by the half section.  Because of these facts, it is extremely unlikely that a homestead such as defined to be exempt from judicial sale, and for the con-veyance of which certain restrictions are prescribed, and limited in acres, outside of a municipality, to 40 acres, was intended.  There is better reason for saying that the word "homestead" was employed in the will. in a popular or descriptive sense.  As suggested by counsel for appellant, the word "property," whether it refer to a right in a thing or to the thing itself, is a generic term of extensive applica-tion.

"Property is *nomen generalissimum,* and extends to every species of valuable right and interest, including real and personal property, easements, franchises, and other in-corporeal hereditaments."  19 Am. & Eng. Encyc. of Law (1st Ed.) 284.

When unrestricted, "property" includes every class of property which a man can own; but it is generally used in a less comprehensive sense.  *Wilson v. Beckwith,* 140 Mo. 359 (41 S. W. 985).  See, also, *Fears v. State,* 102 Ga. 274 (29 S. E. 463); *National Tel. News Co. v. Western Union*

*Tel. Co.*, 119 Fed. 294 (60 L. R. A. 805). The term "property," however, may be, and usually is, restricted, generally by the context. Decedent had two tracts of land, one on which he lived, with his family, and another near by. It is agreed that he did not mean the latter tract. He must have intended the realty upon which he then resided and continued to reside until his death. That was property, and by the word "homestead," testator may have intended to point out this tract of land as that devised, instead of the other, thereby designating the property containing his homestead. Moreover, the word "homestead" has a popular meaning, which he might have employed to point out the devise.

In *Hopkins v. Grimes*, 14 Iowa 73, the devise was to the wife during her widowhood, of "all my homestead tract of land whereon I now reside, except said fractional Section 4, above named;" and in speaking of this, the court said:

"At that time, the word 'homestead' had not, in this state (or territory, as it then was), an abstract, technical meaning, as it is now defined and understood to have, under the statute exempting a homestead from judicial or forced sales, but was used in its general or popular sense, and it is in this sense that it is to be construed, or, to speak, perhaps, more accurately, it should be construed in the sense in which it was used by the testator. At the time of his death, he lived on a farm in the country; of course he used the term in a sense applicable to an agricultural or country residence. Farms are of various sizes, composed of one or more tracts. The word 'homestead' is indeterminate, and imports no specific quantity of land, but was employed, I apprehend, by the testator, in its then common acceptation, to include all the land that was appurtenant to, used, and considered by him as making up the farm which he cultivated, and upon which he resided."

In *Ford v. Ford*, 70 Wis. 19 (5 Am. St. 117), the tes-

tator, in the seventh clause of the will, provided "that my wife, Maggie, shall have the use of my homestead, furniture and appurtenances located on Spaight Street, Madison, Wis., so long as she may desire to live in it as her home;" and with reference thereto, the court said:

"The word 'homestead,' as used in the will, manifestly means the house and all the grounds where the testator lived, and is not restricted to one fourth of an acre mentioned in the statute."

In *Smith v. Dennis,* 163 Ill. 631 (45 N. E. 267), the court remarked that the "term 'homestead,' as used in this will, means 'the dwelling house, at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary and convenient for family use, and lands used for the purposes thereof.'" This evidently was taken from Anderson's Law Dictionary, 512. The consensus of opinion is well stated in 13 Ruling Case Law 540, where it is said that the "word 'homestead' has both a popular and legal signification. In its popular sense, it signifies the place of the home,—the residence of the family; it represents the dwelling house in which the family resides, with the usual and customary appurtenances, including the outbuildings of every kind necessary or convenient for family use, and lands used for the purposes thereof."

Appellant insists that this text is not sustained by the authorities cited.

In California, the limit of the homestead is fixed by value, rather than quantity of land; but nevertheless, the language of the court in *Gregg v. Bostwick,* 33 Cal. 220 (91 Am. Dec. 637), seems to support the text:

"Both in the Constitution and in the statute, the word 'homestead' is used in its ordinary and popular sense—or, in other words, its legal sense is also its popular sense. It represents the dwelling house at which the family resides, with the usual and customary appurtenances, including out-

buildings, of every kind necessary or convenient for the family use, and lands used for the purposes thereof * * * it is unlimited by extent merely."

See *Calmer v. Calmer,* 15 N. D. 120 (106 N. W. 684).

In 1 Underhill on Wills, 304, it is said that:

"The word, in its popular sense, signifies the usual residence of the testator and his family. If in town, the dwelling house, with the customary appurtenances which render it habitable, is meant. If in the country, the term will include the dwelling house of the testator and land which has been cultivated by occupant strictly in connection with it, as well as all convenient barns, stables, and other outbuildings of every sort, necessary or convenient for the proper occupancy of the dwelling house by a family."

The lexicographers appear to be of the same opinion, for the word is defined in Webster's Dictionary:

"The place where one's home is; the home place; a home and enclosure or ground immediately connected with it; the land and buildings thereon occupied by the owner as a home for himself and his family, if any, and more or less protected by law from the claims of creditors."

And by the Standard Dictionary as:

"The house and adjacent land occupied as a home; a farm occupied by the owner and his family; the place of permanent family abode."

Plainly enough, the word has a popular meaning; and we are of opinion that it was either employed by the testator in a restrictive sense, in disposing of the property, as that containing his homestead, or in its popular sense, as describing the premises intended. Nothing in the record suggests the thought on testator's part of using the word "homestead" in the statutory as distinguished from the popular sense. The farm on which he had lived so long, and operated as an entirety, always was, in a popular sense, his homestead property; and it was in this sense, in referring

to the preceding paragraph, that it was mentioned as a homestead in the third paragraph of the will. As contended, words having a legal signification will be presumed to have been used by the testator in that sense; but the expression "my homestead property," without more, tending to identify the property intended, does not, as we think, have a well-defined legal significance, and necessarily depends for its interpretation on the evidence identifying the devise as that intended. The trial court rightly held that the entire farm passed, under the first clause of the will, . to the widow.—*Affirmed.*

PRESTON, C. J., EVANS and STEVENS, JJ., concur.