(No. 16128.—Reversed and remanded.)
SMITH FULLER *vs.* CARRIE FULLER *et al.*—(LULU REID, Appellant, *vs.* CARRIE FULLER *et al.* Appellees.)

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925.*

1. WILLS—*when conveyances merge life estate and part of reversion.* Where a testatrix devises a life estate with remainder to the heirs of the body of the life tenant, who is one of the legal heirs of the testatrix, and with a further devise over to the testatrix's legal heirs in case there are no heirs of the body surviving the life tenant, the devise creates alternate contingent remainders with a double aspect; and where the life tenant, being also a reversioner and a contingent remainderman, makes two deeds of the property to the same person, expressly stating an intention to unite the reversion with the life estate, the portion of the reversion in her is merged with the life estate, and the contingent remainder, to the extent of her interest as heir, is destroyed.

2. SAME—*general rule as to when conveyances merge life estate and reversion.* Where the life tenant conveys the property to a third person and all the reversioners convey to the same person, each expressly for the purpose of destroying the remainder, the person to whom the conveyances are made will take the fee in the entire property divested of the remainder, but where such conveyances are made by the life tenant and only a part of the reversioners, the grantee will take the fee to only such proportional undivided part of the property wherein the person or persons making the deed had a reversionary interest.

3. SAME—*repugnant calls cannot both be correct.* One or the other of repugnant calls may correctly describe the land intended to be devised by the testator, but both cannot do so.

4. SAME—*intention of testator must be ascertained from will.* The object in construing a will is to ascertain the intention of the testator, and this intention can be ascertained only from the language used by the testator in his will, read in the light of the circumstances surrounding him at the time of making the will.

5. SAME—*extrinsic evidence is not admissible to vary intent expressed in will.* Extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed in the will, and no words can be added to or taken from a will which change the plain meaning of the testator expressed therein, nor can the will be reformed because of a mistake made therein by the testator.

6. SAME—*general rule as to rejecting false or repugnant description.* A testator is presumed to have intended to dispose of all his property, and where there are false or repugnant descriptions the court will endeavor to find words in the will that will identify the objects of bounty and the property devised· and will disregard the false or repugnant words if sufficient remains to identify the gift, but if after the false description is eliminated there is not enough left to afford a basis for identifying the subject of gift nothing can pass.

7. SAME—*when line cannot be regarded as a division between tracts of land.* A line can only be held to be a boundary or division line to the extent it is definitely described, and where one of the termini of a line is not definitely fixed and there is no means of definitely fixing it, the line cannot be held as fixing the division between two tracts of land.

8. SAME—*when description of division line will be disregarded.* Where a testatrix attempts to divide a tract of ground into two parts, giving ·the property on one side of a described line to one devisee and on the other side to another, but makes an erroneous description of the division line so that it requires an impossible division of the property, the division line will be disregarded where the property in one devise is referred to as "the Central Hotel," thereby clearly indicating the testatrix's intention to devise to that particular devisee the property so described; and such devise will include not only the hotel building, but also the ground on which it stands and any adjacent ground used as part of the hotel property.

APPEAL from the Circuit Court of DeWitt county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

F. K. LEMON, GROVER C. HOFF, ARTHUR F. MILLER, and JOHN A. BAGLEY, for appellant.

L. O. WILLIAMS, and HERRICK & HERRICK, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal by Lulu Reid from a decree of the circuit court of DeWitt county in a suit brought by appellee Smith Fuller for partition, awarding partition and dismissing the cross-bill of appellant.

Amanda Klein, late of Clinton, Illinois, departed this life testate on October 8, 1914, and by her will, among other things, provided:

"*Third*—It is my will that my real estate, being lots three (3) and four (4), in block eleven (11), in the original town of Clinton, consisting of the Central Hotel, three store buildings facing north on Washington street and four store buildings facing east on Monroe street, together with vacant plat of land immediately east of said buildings, be divided by a line running east from the northwest corner of the north store building which faces west and extending east to a point due south of the east line of said Central Hotel, thence south to alley in said block, said east and west line being the north line of the new store buildings erected by me in the year 1913; that the said Central Hotel and three store buildings facing north, together with all lands in said block facing north and being north and east of said lines, I hereby give and devise to my beloved daughter Lulu Reid, to have and to hold for and during her natural life, then at her death it is my will that the same be given in fee simple to the heirs of her body or their descendants, *per stirpes* and not *per capita: Provided, however,* that said premises shall not be sold, mortgaged and encumbered during the life of the youngest child of the said Lulu Reid which may be living at the time of my decease.

"*Fourth*—It is my will that all land and real estate south and west of said division lines, as described in the foregoing clause, shall be given to my beloved daughter Carrie Fuller for and during her natural life, and at her death, should she survive me, then it is my will that the fee simple title in the remainder vest in the heirs of her body or their descendants, and in case none such should be living at the time of her death, then in that event said premises shall descend to my legal heirs in the same proportion as though I had died intestate."

Deceased left her surviving her husband, Matt Klein, and her daughters, Lulu Reid and Carrie Fuller, her only heirs-at-law. She was the owner of lots 3 and 4, in block 11, in the original town of Clinton. Carrie Fuller has no children, is without issue of her body, and was at that time past fifty years of age. Appellees, Carrie Fuller and Smith Fuller, being husband and wife, conveyed the premises sought to be partitioned on July 19, 1919, to Ralph Parker by warranty deed, a copy of which is attached to the original bill. On July 21, 1919, Carrie Fuller and Smith Fuller by warranty deed conveyed the same premises to Ralph Parker, stating therein that they were conveying the reversion in fee to unite it with the life estate and prematurely destroy the contingent remainder in the heirs of the body of Carrie Fuller. Parker conveyed by warranty deed of July 22, 1919, the same premises to Carrie Fuller, and on December 6, 1919, Carrie Fuller and Smith Fuller conveyed to Smith Fuller an undivided one-third interest in said premises. Appellees claim that thereby Smith Fuller became the owner of one-third interest and Carrie Fuller became the owner of two-thirds interest in fee simple in said premises as tenants in common, and that they are the only persons interested in any manner in said premises.

The original bill made Robert H. Reid, son of Lulu Reid, and Elizabeth, Florence and Robert Reid, Jr., only children of Robert H. Reid, defendants, but alleged that they had no right or title to said premises. The appellant answered the original bill and admitted the making of the deeds as alleged but denied that the particular estate was merged in the reversion, or that Ralph Parker became the owner of said premises, or that Carrie Fuller and Smith Fuller are the only persons interested in the premises.

By the terms of the will, there being no person *in esse* at the death of testatrix who could take under the designation of heirs of the body of Carrie Fuller, the devise to

the heirs of the body was necessarily contingent until the birth of an heir of the body of Carrie Fuller, and it was destructible, pending the contingency, by a merger of the life estate in the reversion in fee. (*Calvert* v. *Calvert,* 297 Ill. 22.) By the provisions of the clause two estates in remainder were created, one in the heirs of the body of Carrie Fuller and the other in the legal heirs of testatrix. The second is to take effect only in case the first does not, and is not in substitution of it.

By the terms of the will Carrie Fuller took a life estate with alternate contingent remainders with a double aspect to the heirs of her body and to the legal heirs of Amanda Klein, who were Carrie Fuller and Lulu Reid, and at the same time the reversion in fee vested in Carrie Fuller and Lulu Reid. (*Friedman* v. *Friedman,* 283 Ill. 383.) This vesting was not affected by the fact that Carrie Fuller, to whom the life estate was devised, was also a reversioner. *Kellett* v. *Shepard,* 139 Ill. 433.

Since the case of *Bond* v. *Moore,* 236 Ill. 576, there is an unbroken line of decisions that where there is an estate for life with a contingent remainder, a conveyance which unites the life estate and the reversion before the happening of the contingency on which the remainder is to vest destroys the remainder. Where the life tenant conveys the property to a third person and all the reversioners convey the property to the same person, each expressly for the purpose of destroying the remainder, the person to whom the conveyances are made will take the fee in the entire property divested of the remainder; but where such conveyances are made by the life tenant and only a part of the reversioners, the grantee in the deed will take the fee to only such proportional undivided part of the property wherein the person making the deed had a reversionary interest. Where there are two reversioners, each having an undivided half interest in the reversion, and the deed is made by the life tenant and one reversioner, the

contingent remainder is thereupon destroyed in an undivided half of the property. (*Lewin* v. *Bell,* 285 Ill. 227; Kales on Estates and Future Interests,—2d ed.—329.) The contingent remainder in the other undivided one-half is not affected by the conveyance.

In accordance with the above rule the court decreed "that the rights and interests of the parties in said premises are as follows: That said Smith Fuller is seized in fee simple of an undivided one-third interest in an undivided one-half interest in said premises, subject to the dower of said Mathias Klein therein; that Carrie Fuller is seized in fee simple of an undivided two-thirds interest of an undivided one-half interest of said premises, subject to the dower of said Mathias Klein therein; and that said Carrie Fuller is further seized of a life estate in the remaining one-half interest of said premises, also subject to the dower interest of said Mathias Klein; that said half of said premises in which said Carrie Fuller has an estate for her natural life therein she is possessed of said life estate with a contingent remainder to the heirs of her body or their descendants, if she should have any living at the time of her death, subject to the dower interest of said Mathias Klein, and with a reversion in fee in said half interest last named in the appellant, Lulu Reid, in the event that Carrie Fuller should die leaving no children or descendants thereof living at the time of her death, and that none of the other defendants in this proceeding other than the said Carrie Fuller, Smith Fuller, Lulu Reid and Mathias Klein have any interest, right, title, estate or claim in and to the said premises which are the subject matter of this suit, and that no other persons have any interest in the same in any way except as to the contingent remainder in the heirs of the body of said Carrie Fuller."

A much more difficult question to determine is as to what property was devised by this provision. In appellant's cross-bill, among other things, she alleged a latent

ambiguity in the description of the property devised to her and Carrie Fuller by the will, and alleged that by the devise of the Central Hotel to appellant she became seized of the life interest not only in the building itself but in the appurtenances thereto, together with the ground south of the hotel facing on Washington street.

The evidence shows such latent ambiguity. There are no store buildings facing east on Monroe street but four face west. A straight line extended due east from the northwest corner of the north store building which faces west would not intersect the east line of the Central Hotel south of the hotel but would run directly through the hotel, cutting off several feet of the entire southern end of it. The court in its decree recognized this ambiguity and decreed to appellant the south line of the hotel in conformity with its various projections.

The record presents a case of repugnant calls. Repugnant calls may or may not be possible and correct descriptions of lands which the testator owned. One or the other of such repugnant calls may correctly describe the land intended to be devised, but both cannot do so. The main object in construing a will is to ascertain the intention of the testator, and this intention can only be ascertained from the language used by the testator in expressing it in his will, read in the light of the circumstances surrounding him at the time of making the will. Extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed in the will itself, and no words can be added to or taken from a will which change the plain meaning of the testator as expressed by his will. No will can ever be reformed because of a mistake made therein by the testator. (*Clancy* v. *Clancy,* 250 Ill. 297; *Alford* v. *Bennett,* 279 id. 375; *Stevenson* v. *Stevenson,* 285 id. 486.) It being evident from the fact of making a will that the testator intended to dispose of his property, the court will endeavor, if possible, by searching all

the provisions of the will, to find words that will identify the objects of his bounty and the property devised by him and give effect to the will as he has expressed it, if that can be done without the addition or subtraction of words that will change the plain meaning of the will as expressed therein, and if, after the false or repugnant description or part of a description is discarded, there remains in the devise language sufficiently full and accurate to identify the subject of the gift with sufficient certainty, the property there indicated will pass. If, on the other hand, when the false description is eliminated from the will there is not enough left to afford a basis for identifying the subject of the gift nothing can pass. *Stevenson* v. *Stevenson, supra.*

The east and west line mentioned in the will is only definitely described as being the north line of the new store buildings erected in 1913. A line can only be held to be a boundary or division line to the extent to which it is definitely described. Where one of the termini is not definitely fixed and there is no means of definitely fixing it, then such line cannot be held as fixing the division between two tracts of land. In the present case the east terminus of the east and west line is described as "a point due south of the east line of said Central Hotel." The distance of this terminus south of such east line is not fixed, neither is the point of intersection of the east and west line with the east line of the Central Hotel extended, and there is no means of fixing it either by the words of the will or by the evidence in the case. This line, therefore, must be entirely discarded as a division line so far as it affects the devise of the Central Hotel. The question then naturally arises, Is there a sufficient description in the will of the premises sought to be partitioned so that the premises can be definitely and accurately located?

In *Kennedy* v. *Kennedy*, 105 Ill. 350, the testator being the owner of 636 acres of land forming one connected body, upon which he resided, and which he cultivated and

carried on as one common farm, and upon which there were four tenant houses, made a devise to his wife in the following language: "I give and bequeath to my wife, Mary, my homestead, to have and to hold during her life." It was held that the word "homestead" was not used in the statutory sense but was meant to embrace the entire farm upon which he resided.

In *Smith* v. *Dennis*, 163 Ill. 631, the testator devised to his wife his homestead during her lifetime. It was there held that the term "homestead," as used in the will, means "the dwelling house at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary and convenient for family use and lands used for the purposes thereof."

In *Myers* v. *Norman*, 46 S. W. 214, it was held that a devise by a testatrix of "the house and lot and appurtenances thereto belonging, where I now reside," included three adjoining lots used for many years by the testatrix for a homestead, and not merely the lot on which the house stood.

In *McKeough's Estate* v. *McKeough,* 69 Vt. 34, it was held that a devise of "my home place, where I now live," carried with it not only the house in which the testator lived, but also the chicken house and yard, coal and wood-shed, together with the yard, separated from the other portion of the premises by a fence, with the right of access for teams to the space in the rear of the house as enjoyed by the testator.

In *Gilbert* v. *McCreary,* 87 W. Va. 56, in holding that the devise of a house by a designation in the will as "No. 114 Tenth street" carried with it not only the house but also whatever reasonably and necessarily belonged to it as a place of residence, including the ground on which it stood and such additional ground as has been defined as belonging to it by use thereof in connection with it, the court said: "The English cases construing wills leave no doubt that a

devise of a house carries all the land necessary to full use and enjoyment thereof. The contrary has never been so much as suggested. More than was really necessary or required for convenience has been held to have passed by such a devise. A devise of a house and garden carried stables, a yard and a coal-pen on the opposite side of the road from the house. (*Clements* v. *Collins,* 2 T. R. 498.) A devise of a life estate in a house carried certain lands used to produce hay and corn used on the premises. (*Blackborn* v. *Edgley,* 1 P. W. 600.) The word 'house' in an eminent domain act was held not to include a six-acre field lying across the road from a house and a considerable distance from it, though used in connection with the house for purposes not indispensable. In that case, however, Turner, L. J., said: 'Now, I take the law on the point to be that by the description of a 'house,' what is necessary for the convenient occupation of the house will pass.' *Steele* v. *Midland Railroad Co.* L. R. 1 Ch. App. Cas. 275.''

In *Hartfield* v. *Pennsylvania Co.* 89 N. J. Eq. 45, in holding that where a testator purchased a tract of land and later an adjoining tract, after which he erected a house on the first tract and fenced in both tracts for a lawn, his devise of it as ''my house'' included both tracts, it was said: ''In 15 Am. & Eng. Ency. of Law, (2d ed.) 771, it is stated that in a devise or grant the word 'house' will carry the land upon which the house is built and the curtilage. The authorities there cited adequately support the rule as stated. In 10 Am. & Eng. Ency. of Law, 353, substantially the same rule is stated, as follows: 'At common law the term 'dwelling house' included not only the premises actually used as such, but also such outbuildings as were within the curtilage or courtyard surrounding the mansion house.' In *Derrickson* v. *Edwards,* 29 N. J. L. 468, 474, 80 Am. Dec. 220, our Court of Errors and Appeals in a mechanic's lien case has defined a curtilage as

follows: 'A curtilage is a piece of ground within the common inclosure belonging to a dwelling house and enjoyed with it for its more convenient occupation.' In harmony with these views Chancellor Runyon held in *Lanning* v. *Sisters of St. Francis,* 35 N. J. Eq. 392, 401, that the following devise, 'I will my house to * * * No. 160 Rose street, Trenton,' was a devise of all of the land of testatrix adjacent to the house that had been used in connection with the house; and in *Inhabitants of Phillipsburg* v. *Bruch's Exrs.* 37 N. J. Eq. 482, 485, Vice-Chancellor Van-Fleet gave approval of *Bennet* v. *Bittle,* 4 Rawle, (Pa.) 339, and *Rogers* v. *Smith,* 4 Pa. St. 93, to the effect that a devise of a 'house,' without further descriptive words, is to be deemed to be synonymous with messuage and to pass all within the curtilage of the house."

The undisputed evidence in the case shows that testatrix at the time of making her will resided in the Central Hotel and was fully conversant with it and its surroundings; that in the south side of the Central Hotel building were several windows and doors, the use of which would be entirely destroyed if the south line of the devise for life to appellant be held to be the line fixed by the court in its decree; that on the south side of the building there is a wide porch, with steps leading down from it to a concrete walk some distance from the buildings; that on the ground to the south of the building were sheds, which were used during the lifetime of the testatrix in connection with the hotel as wood and coal-sheds; that there are permanent brick walks leading from the hotel building to these sheds; that there are shade trees near the building, under which, in the lifetime of the testatrix, were placed benches and chairs for the use of testatrix and the guests of the hotel; that the space immediately south of the hotel building was used in connection with the hotel for hotel purposes and was not used in any manner in connection with the buildings facing upon Monroe street but was sep-

arated therefrom by a fence commencing near the north-east corner of the north store building facing on Monroe street; that this fence separated the hotel property from the property lying southwesterly thereof at the time of the making of the will. It was evidently the intention of testatrix that the division line between the devises to appellant and Carrie Fuller should not be the south line of the Central Hotel with its projections, but that the devise to appellant should carry with it some land to the south of the hotel. This is evidenced by the fact that she placed the intersecting point between the division line and the east line of the Central Hotel at a point due south thereof.

Applying the principles of law above stated to the facts of this case, we must hold that by the term "the Central Hotel," as used in the will of testatrix, she intended to devise to appellant for life not only the building and the ground upon which the hotel stood but also the parcel of land lying to the south thereof, which was used by testatrix, at the time of the making of the will, in connection with and as a part of the hotel property, and that the division line between the properties devised to appellant and Carrie Fuller must be fixed with reference thereto. The exact location of the fence was not fixed by the evidence, nor does the evidence in the case sufficiently fix the boundary lines of the parcel of land used by testatrix as part of the hotel property.

The decree of the circuit court is reversed, with directions to proceed, in accordance with the views herein expressed, to ascertain and fix the dividing line between the property devised to Carrie Fuller and appellant, and to hear further evidence for the purpose of locating such dividing line in accordance with the views herein expressed and to decree accordingly.

*Reversed and remanded, with directions.*