(No. 20080.

JAMES PALLISER *et al.* Trustees, Appellants, *vs.* MARY FLORENCE MILLS *et al.* Appellees.

*Opinion filed April 17, 1930—Rehearing denied June 10, 1930.*

SOLBERG, HUMMELAND & WINANS, (ANDREW HUMMELAND, and KELLAM FOSTER, of counsel,) for appellants.

EDWY LOGAN REEVES, and CHARLES FRANCIS BAKER, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

December 1, 1890, Mary Anne Jennings Hodgson, at Chicago, departed this life testate, and by her last will and testament, after some minor bequests, gave to her husband, as executor and trustee, and to his successors as such, all her property in trust for her daughter, Mary Jane Susanna

Hodgson, during her lifetime, with directions that at the death of the daughter the property was to descend to her children, and in the event that the daughter died leaving no children, the property was to go to two sisters of testatrix, Susanna Fearnley and Elizabeth Palliser, both aliens, residing in England, and at their death to their children, share and share alike. The daughter died November 2, 1925, leaving no lineal descendants her surviving. She was predeceased by both of the sisters of testatrix. The trust property at the death of testatrix consisted of three pieces of real estate in Chicago, one at 2921-23 Indiana avenue, one at 3148 Indiana avenue, and the other, which is the only one here in question, consisting of. a lot with a frontage of seventy-five feet at the southwest corner of Michigan avenue and Fifty-eighth street, all in Chicago, and two bank deposits, one of $10,000 in the First National Bank of Chicago and the other of $2000 in the Illinois Trust and Savings Bank. By her will testatrix directed that a house or flat should be built at 3148 Indiana avenue to cost $6000, the money to be taken from the First National Bank deposit. She also directed that the frame building at 2921 Indiana avenue be sold and a flat-building to cost $6000 be erected in its stead. As to the Michigan avenue property the will provided:

"Fifth—The seventy-five feet of land on the corner of Fifty-eighth street and Michigan ave. being the southwest corner which I also own, I do not want that to be sold until it is worth two hundred dollars per foot, and then only to buy a homestead for my daughter which she is to enjoy as long as she lives as also the rest of my estate unless she should re-marry Hories H. Turner then all her interest in this estate stops, excepting one hundred dollars which she can have for herself. I also wish it understood that I do not wish any more of my estate sold but my Michigan ave. lots as I think they will have enough to pay all expenses and support my daughter also as for my husband he has an

abundant estate in his own right and does not need any of mine but will I think render such assistance to my daughter as she may need."

On January 10, 1896, Amos Grannis, who was then executor and trustee under the will, conveyed, as such, by special warranty deed, the premises in question to the daughter, Mary Jane S. Hodgson, for the expressed and receipted consideration of $15,000.

May 12, 1926, all of the heirs of the deceased intestate sisters united in a deed of trust to the premises in question to James and John Palliser, appellants, giving to them full power to sell and dispose of the same. As such trustees they on February 15, 1927, conveyed one-twentieth of the property to Mary F. Mills, and on February 28, 1927, filed their bill in the circuit court of Cook county for partition, making Mary F. Mills, the executors and trustees under the last will and testament of the deceased daughter, and others, parties defendant. The bill alleged the facts substantially as herein stated, and in addition alleged that the deed of the Michigan avenue property from the executor and trustee to the daughter of testatrix was without consideration, was fraudulently made and in violation of the conditions and purposes expressed in the will. Issue being joined as to the latter allegations, the cause was referred to a master in chancery, who took the proofs and reported his finding to the court, together with a recommendation that the bill of complaint be dismissed for want of equity at complainants' cost. After a hearing the court entered a decree dismissing the bill in accordance with the master's report, from which decree appellants have appealed to this court.

The larger portion of the briefs and arguments of the parties is devoted to a discussion of the questions as to what estate testatrix devised to her sisters, whether it was vested or contingent, whether the devise was intended to take effect upon the death of testatrix or upon that of

her daughter, whether by reason of the existence of an Illinois statute in force at the death of testatrix which provided that a non-resident alien should not be capable of acquiring title to, taking or holding any real estate in this State by devise or otherwise the sisters acquired no interest by the will, and whether by reason thereof appellants, who must trace their descent through a mediate non-resident alien ancestor, were barred from taking any interest by reason of the non-inheritable blood of their ancestor. In the view which we take of this case it is not necessary to decide any of these questions.

By the will the executor and trustee was given power to sell and convey the Michigan avenue property without any limitations as to the personage to whom it might be sold. The daughter of testatrix had as much right to purchase as any other person. While the power was coupled with the precatory words, "I do not want that to be sold until it is worth two hundred dollars per foot," yet the undisputed evidence is that at the time of the sale its value was liable to be lessened by the threatened influx of colored population to that neighborhood, and the undisputed evidence of the ancient document itself, which was over thirty years old at the time of the commencement of this suit, and the other evidence in the case, is that the daughter paid $15,000 therefor, which was $200 per foot. (*Reuter* v. *Stuckart,* 181 Ill. 529.) The consideration expressed in the deed was $15,000, the receipt whereof was acknowledged, and the deed also contained the following recital: "This deed is made in pursuance of and by direction of the will of Mary Ann Jennings Hodgson to replace the money advanced to me by Mary Jane S. Hodgson and by me put into the building number (2921) twenty-nine hundred and twenty-one Indiana avenue as a homestead for the said Mary Jane S. Hodgson."

While the evidence shows that at the time of the making of the deed the premises were not worth $200 per foot,

yet the consideration expressed in the deed is *prima facie* the amount paid for the land. (*Howell* v. *Moores,* 127 Ill. 67.) In this case the fact that the sale was *bona fide* and for a valuable consideration does not rest solely on the recitals in the deed and the presumption arising therefrom, as after the lapse of over thirty years and the death of the grantee appellees were able to produce receipts found among the grantee's effects aggregating $14,178.17, which are admitted to have been for moneys advanced by her for building the flats at 2921 Indiana avenue. Many other receipts for moneys expended were found, but as they did not show whether they were for 2921 Indiana avenue or some other building they have not been considered.

It is claimed by appellants that the sale was void, as it was only authorized for the purpose of buying a homestead for the daughter, and that investing the proceeds of the sale in a flat-building was in violation of the directions of the testatrix. The word "homestead" is not defined in the will, and while the word has a statutory meaning, yet from the context it is evident that testatrix did not use it with that meaning but in its ordinary acceptation. In *Kennedy* v. *Kennedy,* 105 Ill. 350, it was held that the word "homestead," as used in the will there under construction, was not used in the statutory sense but was meant to embrace the entire farm upon which the testator had resided. In *Smith* v. *Dennis,* 163 Ill. 631, the testator devised his homestead to his wife during her lifetime, and it was held that the term "homestead" there meant "the dwelling house at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary and convenient for family use, and lands used for the purposes thereof." These cases are cited with approval in *Fuller* v. *Fuller,* 315 Ill. 214. In the instant case it is evident that testatrix intended that the proceeds of the Michigan avenue property should be invested in a home or place where the daughter might reside during her lifetime, with-

out restriction upon the trustee as to the character or location of such place of abode, whether in a flat or a single dwelling. The evidence shows that the daughter claimed 2921 Indiana avenue as her residence, occupied it as her homestead and had her furniture and other belongings there at the time of her death. The master and court found that the sale was made in good faith and in substantial compliance with the will of testatrix, and we concur in their findings. The sale to the daughter being valid and this suit being for partition of the premises sold, appellants have no interest in the premises sold and cannot in this suit question the disposition of the proceeds of the sale or have partition of the premises.

The decree of the circuit court is affirmed.

*Decree affirmed.*