(No. 34903.—

CHARLES BAKER *et al.,* Appellants, *vs.* LORETTA BAKER FORSUMAN *et al.,* Appellees.

*Opinion filed November 26, 1958—Rehearing denied Jan. 22, 1959.*

MERRILL I. SCHNEBLY, of Urbana, and MILLER & MILLER, of Lincoln, for appellants.

HAROLD F. TRAPP, JR., of Lincoln, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This partition suit calls for a construction of the will of Nicholas Baker who died in 1896, survived by his ten children. The plaintiffs are two of the children of William F. Baker, the youngest son of the testator. They claim an interest in the land in question under the will of their grandfather. The principal defendants are Blanche R. Bates and Donald D. Murray, who claim fee simple title under a conveyance executed by William F. Baker, the father of the plaintiffs.

We are concerned primarily with the sixth and eighth clauses of the will. Clause 6 states, "I give and bequeath to my son, William F. Baker" the tract of land here in controversy "containing One hundred and twenty acres. And a strip of land eleven feet wide off of the West side of" a described quarter section, "to enjoy and possess the same during his natural life." Clause 8 states, "In case of the death of any of the legatees or devisees mentioned in the different paragraphs of this my last Will and Testament it is my will and desire, that the portion of any estate set apart to them shall with all the conditions and provisions descend to their heirs further stipulated however, that in the event of any of my children not having been or being married or

having any living issue through marriage, then and in that event such portion or portions of the estate herein devised to them shall be divided equally among Louisa, Catharine and Emiline Baker my three daughters, and Nicholas, Louis, Theodore W., August J., and Joseph E. Baker my five sons, meaning and intending that the survivor or survivors among these eight children to be the participants of any divisions that have to be made owing to the death of any devisee or legatee mentioned herein."

The first, third, fourth and fifth clauses of the will all follow the same pattern. The first is illustrative. It "gives and bequeaths" to the testator's son, Nicholas, a described tract of land containing 160 acres. It provides, however, that until Nicholas pays $2,000 to his sister, Emiline, she is to retain a lien for that amount upon a specified 40 acres. In the event that the $2,000 is not paid within a stipulated time after the testator's death, she is to consider the 40 acres as set off to her for her life, and after her death to be divided among the children of her first marriage. There are variations from one of these clauses to another, but each of the four sons named in these four clauses of the will receives 160 acres, subject to a reduction by 40 acres in the event that he fails to make the payments required by the will within the time specified.

Clause 2 gave an 80-acre tract to Louis, another son, "to enjoy and possess the same during his natural life and after his death to be equally divided to his children." Clause 7 in the same terms gave 40 acres to a daughter, Louisa, for life with a remainder to her children.

Clause 9 directed that $1,000 be paid from any residue of personal property to Mary, the testator's first child, and his only child by his first wife. Clause 10 expressed the testator's "will and desire" that the residue of the proceeds of any personal property "be given and bequeathed among my surviving children." The will contains no residuary clause pertaining to real property.

When Nicholas Baker executed his will in 1894, and when he died in 1896, all of his children, except William F. Baker, were married and had children of their own. William F. Baker married in 1897. In the same year he conveyed by warranty deed all his interest in the land bequeathed and given him under his father's will. The defendants, Bates and Murray, are successors in interest under this conveyance, and they claim fee simple title to the 120 acres. William F. Baker died in 1957, and was survived by his nine children. The plaintiffs, two of those children, claim that upon the death of William F. Baker the remainder in 9/10 of the land vested in his nine surviving children.

The trial court did not adopt either of these contentions, but concluded that the sixth clause of the will gave William F. Baker a life estate and that the will did not dispose of the remainder following that life estate. A reversion descended, therefore, in equal undivided shares to the ten children of Nicholas Baker, the testator. By his warranty deed of 1897 William F. Baker consequently conveyed his life estate and his 1/10 interest in the reversion. The balance of the fee descended to the other nine children of Nicholas. The plaintiffs have appealed from the decree embodying these conclusions, and the defendants Bates and Murray have cross-appealed.

The plaintiffs agree with the trial court that William took a life estate in the property. They claim, however, that clause 8 created a contingent remainder in William's descendants or heirs of the body, with an alternative contingent remainder over, upon William's death without issue surviving him, in favor of such of the eight children of the testator named in clause 8 as might survive William.

The defendants derive whatever title they have through William's warranty deed. They say that clause 6 gave William a fee and that the words "to enjoy and possess the same during his natural life" which appear in that clause,

are there because of an error of the scrivener. The reference in clause 8 to the "death" of any devisee, they argue, contemplates a death only during the testator's lifetime. Thus they conclude that when William survived his father he took a fee simple absolute. Alternatively, they urge that if William took only a life estate under clause 6, the gift in clause 8—"In case of the death of any of the * * * devisees * * * mentioned * * * the portion * * * set apart to them shall * * * descend * * * to their heirs"—invites the application of the rule in *Shelley's case.* The application of that rule would convert a remainder to the "heirs" of a life tenant into a remainder in fee to the life tenant himself. William, thus having a life estate and the remainder in fee, would have taken the whole fee, for the life estate and the remainder in fee would have merged. Carey and Schuyler, Ill. Law of Future Interests, sec. 94.

We think that clause 6 did not devise a fee to William. To conclude otherwise it would be necessary to reject entirely the words "to possess and enjoy the same during his natural life," or to hold them applicable only to the narrow strip of land devised by the same clause. We see no reason to suppose that the testator wanted to give William a fee in the major parcel of property disposed of by clause 6 and to give him only a life estate in the small strip of land described in the same clause. Nor do we think it proper to reject the words entirely as an error of the scrivener. The words are unambiguous and they should be given their natural and ordinary meaning unless to do so would result in an obvious distortion of the testator's intention. The contrary is true here; these words must be given their ordinary meaning in order to conform to what appears to be the testator's overall scheme of disposition. We therefore hold that clause 6 gave William a life estate in all of the property there described.

Although our view of clause 6 coincides with that of the trial court, we do not agree that the word "death" as

used in clause 8, refers only to William's death during the testator's lifetime. The word "death," in the case of a gift over upon the death *simpliciter* of one to whom a fee is given, is thought to refer to a death during the testator's lifetime because one may not make an unqualified gift of a fee to be taken away upon an event that is certain to occur. In such instances, "death" being "an event of all others the most certain and inevitable," it is necessary that the word be coupled with some contingency, and for this reason it is normally said to refer to a death before that of the testator. 3 Jarman, Wills, 8th ed., 1951, 2003-2004.

Where, as here, there is a gift of a life estate only, there is no reason to hold that a gift "in case of the death of" William relates to his death before that of the testator. Indeed, as stated by Jarman, if a testator gives property "to A expressly for life, 'and in case of his death' to B, the. irresistible inference is that these words are intended to refer to the event on which the prior life interest will determine, and that the bequest to B is meant to be, not a substituted but an ulterior gift, to take effect on the death of A *whenever that event may happen.*" (3 Jarman, Wills, 8th ed., 1951, 2010.) Accordingly, as to William, we hold that the gift in case of his death refers to his death at any time. Whether or not the same result would follow with respect to property described in other clauses of the will is a question that is not now before us and cannot now be decided, because there are persons interested in that property who are not parties to this case.

The alternative contention of the defendants that the rule in *Shelley's case* and the doctrine of merger operated to give William a fee, is based upon the assumption that the word "heirs" as used in clause 8, is a word of limitation and not a word of purchase. Although the rule in *Shelley's case* was abolished in 1953, the statute that abolished it has no retroactive application. Ill. Rev. Stat. 1957, chap. 30, pars. 186, 187.

"Heirs" is a technical word. Normally, it refers to those persons who succeed to the real estate of the person whose "heirs" are mentioned, upon the death of that person intestate. That technical meaning is not lightly rejected, because it is assumed that a technical word is deliberately used. But context and circumstances may justify the interpretation of the word "heirs" as meaning "children" or "issue" (*Wilson* v. *Wilson,* 261 Ill. 174,) even in cases involving the rule in *Shelley's case. Griswold* v. *Hicks,* 132 Ill. 494; *Stisser* v. *Stisser,* 235 Ill. 207; Carey and Schuyler, Ill. Future Interests, sec. 96, pp. 163, 164.

In this case the gift in clause 8 of the will,—in case of the death of a devisee to the "heirs" of the devisee,—is followed by a further provision giving the property to eight named children of the testator "in the event of any of my children not having married or being married or having any living issue through marriage  *  *  *." We interpret this provision to mean that the eight named children, or the survivors among them, were to take the property in which clause 6 gave William a life estate if William never married, or if, having married, he died without issue surviving him. Under the Statute of Descent as it existed when the will was made and when the testator died, the word "heirs" was synonymous with the words "descendants" or "issue" if a decedent died leaving issue. Under those circumstances a spouse inherited no real estate, though she did inherit a portion of her husband's real estate if he died leaving no descendants. (Laws of 1877, p. 93; Carey and Schuyler, Ill. Future Interests, 1954 Supp., sec. 142.) According to the rules of descent in existence when the will was made and when the testator died, if William died leaving issue, his "issue" would be his "heirs." Only if he died without issue would a surviving spouse have been an heir.

Since William was unmarried when the will was made and when the testator died, we think it unreasonable to sup-

pose that the testator intended that a spouse unknown to him should inherit a portion of the real estate in which William was given only a life estate. It is more sensible to infer that the testator wanted William's issue, who would be his "heirs," to take if he left issue surviving him. If he did not, then the property was to stay in blood lines, among the children of his second marriage, even if William was survived by a widow. We think that by the word "heirs" the testator meant "issue." Every other child of the testator was married and had children when the will was made and when the testator died. He had considerable assurance, as to the other real estate disposed of by his will, that his land would stay within his own family regardless of the size of the estates given his other children. He could have this assurance as to William's portion only by keeping the fee from William and a possible widow whom he did not know.

In reaching these conclusions we have not overlooked the argument of the defendants that the reversion in the property in which William was given a life estate should not be allowed to pass intestate to the testator's heirs. The leaning in favor of testacy is strong, (*Strauss* v. *Strauss,* 363 Ill. 442; *Cahill* v. *Michael,* 381 Ill. 395; *Krog* v. *Hafka,* 413 Ill. 290; *Caracci* v. *Lillard,* 7 Ill.2d 382; *Wise* v. *First National Bank in Greenville,* 10 Ill.2d 623,) but it expresses only a canon of construction that is useful in determining what a deceased person would have wanted to say about something if he had thought of it. It has its roots in the notion that one who has made a will, especially if its provisions exhaust most possibilities, probably wanted to leave nothing to chance.

In this case the reason for the rule is satisfied by the construction we have adopted, for even though the reversion in the property described in clause 6 was not disposed of by clause 8, and even though in the feudal sense this rever-

sion was vested, it was largely ephemeral in every practical sense. Though 1/10 of it passed by intestacy to William and thus enabled him to convey a 1/10 interest in the property in fee, there was virtually no chance that any part of the other 9/10 would not go as the testator provided by his will. If William left issue, the property would go to them; if he left none there were eight brothers and sisters who must predecease him before intestacy would ensue. Only if William could persuade his brothers and sisters to join in an attempt to destroy their own future interests was there substantial likelihood that the testator's disposition of 9/10 of the property would be jeopardized. It is unrealistic, we think, to press the presumption against intestacy to this point.

We hold that the will of Nicholas Baker gave his son William a life estate in the property described in clause 6 and that clause 8 created a contingent remainder in his unborn issue followed by an alternative contingent remainder over to the survivors or survivor of William's eight brothers and sisters named in clause 8. These contingent remainders were fractionally destroyed by William's conveyance in 1897 (*Lewin* v. *Bell*, 285 Ill. 227; *Fuller* v. *Fuller*, 315 Ill. 214,) and the defendants are the owners in fee simple of an undivided 1/10 of the property. The plaintiffs are each the owners in fee simple of an undivided 1/9 of the remaining 9/10.

The decree of the circuit court of Logan County is reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*